John DOE, by his guardian ad litem Pauline GONZALES, Plaintiff/Appellee/Cross-Appellant,

and

Jack Smith, Plaintiff/Intervenor/Cross-Appellant,

v.

William MAHER, et al., Defendants/Appellants,

and

Wilson Riles, etc., et al., Defendants/Appellants/Cross-Appellees.

Nos. 83–2613, 84–1984 and 84–2080.

United States Court of Appeals, Ninth Circuit.

Argued Oct. 9, 1985.

Submitted Nov. 27, 1985.

Decided July 11, 1986.

Sheila Brogna, Toby E. Fishbein Rubin, William J. Taylor, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiff/appellee/cross-appellant.

M. Mari Merchat, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, Cal., for amicus curiae.

Thomas M. Berliner, Asher Rubin, San Francisco, Cal., for defendants-appellants.

Before SNEED, SCHROEDER and BRUNETTI, Circuit Judges.

SNEED, Circuit Judge:

The California Superintendent of Public Instruction (State Superintendent), the San Francisco Unified School District (SFUSD), the Superintendent of the SFUSD, and various other school officials appeal the expansive declaratory judgments rendered, and the injunctions imposed, by the district court pursuant to the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. §§ 1401–1461 (1982), and section 504 of the Rehabilitation Act (section 504), 29 U.S.C. § 794 (1982), in favor of appellees John Doe and Jack Smith, two emotionally handicapped students.[1] Doe and Smith cross appeal the district court's dismissal of their damage claims against the State Superintendent.

We affirm in part, reverse in part, and modify in part.

## I.

### INTRODUCTION AND OUTLINE

This is a case affected by deep and strong emotional currents and fundamental civic concerns. In brief, it concerns the education of children, particularly handicapped children. It teaches that those who serve by educating both the handicapped and the non-handicapped must accept an increment to their already not insubstantial bureaucratic yoke, that those who love their children must sometimes make sacrifices in order to accommodate the interests of other children and their equally loving parents, and that those of us who adminis-

ter the law must recognize the limits of our capacity to achieve perfect justice.

Because our opinion is lengthy, understanding will be advanced by outlining its structure. It is divided into seven parts, not counting this introduction and a brief conclusion. These are as follows:

II. Facts and Procedural Background

III. Analysis of the Applicable Statutory Structure

IV. District Court Rulings Regarding Disciplinary Matters

V. District Court Rulings Regarding Placement Procedures

VI. District Court Rulings Regarding the Reduction of Smith's Schedule

VII. District Court Rulings Affecting Duties of the State

VIII. Disposition of Plaintiffs' Damage Claims

## II.

### FACTS AND PROCEDURAL BACKGROUND

Appellee John Doe is an emotionally disturbed child with aggressive tendencies in certain circumstances. This condition renders him handicapped within the meaning of both the EAHCA[2] and section 504 of the Rehabilitation Act.[3] All parties agree that he is entitled to whatever protections those statutes afford. Pursuant to an individualized educational program (IEP) designed for Doe in April 1980, the SFUSD placed him at the Louise Lombard School (Louise Lombard), a developmental center for the handicapped.

---

1. The district court's unpublished declaratory judgments and injunctions against the SFUSD, see C.R. item 272, and the state, see C.R. item 304, are reproduced in the appendices to this opinion. Because we consider the terms of these documents in some detail, the reader's understanding of this opinion will be greatly enhanced by frequent reference to them.

2. The EAHCA defines "handicapped children" as mentally retarded, hard of hearing, deaf, speech or language impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific

learning disabilities, who by reason thereof require special education and related services. 20 U.S.C. § 1401(a)(1) (Supp. I 1983).

3. For purposes of section 504 (as applied in the context of education), "handicapped individual" means
 any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.
29 U.S.C. § 706(7)(B) (1982).

On November 6, 1980, Doe assaulted another student and broke a school window. When interviewed by the school principal, Henry Caruso, Doe admitted his misconduct. Caruso suspended Doe for five days, until November 14. On that date Doe, his mother, and their attorney met with Caruso to discuss the suspension. Caruso referred Doe to the Student Placement Committee (SPC),[4] with the recommendation that he be expelled. On the day of the conference with Caruso, the SPC notified Doe's mother by letter that it was recommending Doe's expulsion[5] from the SFUSD, but that she had the right to a conference with the SPC on November 25. The SPC also continued Doe's suspension indefinitely. This was done in reliance on former California Education Code § 48903(h), which allowed an extension of suspension beyond five days pending the resolution of expulsion proceedings.[6]

Doe's counsel by letter objected to the use of these procedures on the ground that they violated the EAHCA. He asked the SFUSD to cancel the expulsion hearing and convene an IEP team. The SFUSD ignored this request and Doe sought relief in the district court. On November 24, the day before the scheduled conference with the SPC, the SFUSD agreed to cancel the expulsion proceeding against Doe. The district court issued a temporary restraining order on December 2 that directed the SFUSD to readmit Doe to the Louise Lombard School. *See* Court Record (C.R.) item 11. On December 10, the court issued a preliminary injunction enjoining the SFUSD from excluding Doe from Louise Lombard while efforts were being made to find him an alternative placement pursuant to his IEP recommendation. *See id.* item 40. Doe finally returned to Louise Lombard on December 15.

Appellee Jack Smith, like appellee Doe, has a propensity for aggressive behavior and is emotionally handicapped within the meaning of the EAHCA and section 504. In February 1980, an IEP team recommended that Smith be given a special education placement in a regular school setting at A.P. Giannini School (A.P. Giannini). His then-current IEP stated that "[t]his program is on a trial basis dependent upon [Smith's] ability to adapt to a regular school." With this IEP, Smith entered A.P. Giannini in September 1980. Following a number of incidents of misbehavior on Smith's part, the school unilaterally decided on October 14 to reduce his program to a half-day schedule. At some point, his grandparents agreed to the reduction. However, school officials appear never to have apprised them of their right to challenge the reduction, or of the other safeguards available to them under the EAHCA.

On November 14, Smith made sexual comments to several female students. Smith admitted these acts to the school principal, who suspended him for five days and referred him to the SPC for expulsion. By a letter dated November 21, the SPC notified Smith's grandparents that it was recommending to the school board that Smith be expelled from the SFUSD and also that a conference was set for December 2. As in Doe's case and in reliance on former California Education Code § 48903(h), the SPC also continued Smith's suspension pending resolution of the case.

On November 28, in a letter to the SPC, Smith's counsel objected to the expulsion proceedings. On December 1, the SPC cancelled the December 2 hearing and offered either to restore Smith to his half-day pro-

---

**4.** The SPC bears responsibility for making the initial determination whether a student should be expelled. Its decision is then reviewed by the school board.

**5.** The California Education Code uses two terms —"expulsion" and "exclusion"—to refer to action whereby the school district ceases providing services to students either permanently or for an extended period of time. Although some provisions of the Code use one term and some use the other, we can discern no relevant distinction between them for our purposes here. Thus, we use them interchangeably except where quoting from state statutes.

**6.** Former Education Code section 48903(h) has been substantially incorporated into the current Education Code at section 48911(g).

gram at A.P. Giannini or to provide him with home tutoring. Because the SPC refused to allow Smith to return to his full-day program as requested, his grandparents chose home tutoring. Home instruction began on December 10, and an IEP team convened on January 6, 1981. Smith's counsel became aware of Doe's suit and petitioned the district court for leave to intervene. The court granted the request on February 27, 1981.

The claims raised by Doe and Smith are similar. Each complains of extended suspension pursuant to the initiation of expulsion proceedings. Smith complains of the reduction of his program to a half-day schedule. Each also asserts violations of the EAHCA, section 504 of the Rehabilitation Act, and various wrongs actionable under 42 U.S.C. § 1983.

The claims against the SFUSD were predicated upon the direct action taken by district officials against Doe and Smith. The claims against Wilson Riles, the former State Superintendent of Public Instruction, were based on his alleged failure (1) to establish a policy regarding the discipline of handicapped students, (2) to monitor the SFUSD's compliance with the EAHCA, and (3) to intervene when the SFUSD deprived Doe and Smith of their rights under the EAHCA. The plaintiffs prayed for injunctive and declaratory relief, as well as damages, against all the defendants in their official and individual capacities.

On May 25, 1982, in the course of pretrial discovery, the district court issued an opinion stating, in part, that the Eleventh Amendment barred all recovery of damages against the State Superintendent, but that damages would be available against the SFUSD defendants under section 1983 and section 504. *See* C.R. item 155. On June 17, 1983, the court granted plaintiffs' motion for Partial Summary Judgment against the SFUSD defendants, and the parties promptly entered into a settlement whereby Doe and Smith released the SFUSD defendants from all damage liability in exchange for $1600 each. Finally, on December 2, 1983, the court issued a de-

claratory judgment and permanent injunction against the SFUSD. *See* C.R. item 272, *reprinted in* Appendix A, *infra.*

Litigation against the State Superintendent was more protracted. On July 11, 1983, the court denied the plaintiffs' summary judgment motion against the State Superintendent on the ground that several factual issues remained to be resolved. Sixteen days later, the court granted the State Superintendent leave to amend his complaint to plead good-faith immunity from the claims against him in his individual capacity and sovereign immunity from the claims against him in his official capacity. *See* C.R. item 252. Doe and Smith immediately filed a proposed discovery plan, but the court denied the proposal for the reason that the plaintiffs had not stated, and could not state, a claim against the State Superintendent in his individual capacity, and that further discovery would not serve to advance their claims against him in his official capacity. *See* C.R. item 265.

These skillful managerial steps by the district court brought into focus the injunctive relief sought by Doe and Smith. The parties filed cross-motions for summary judgment on January 9, 1984, and on April 23, 1984, the court found in favor of the plaintiffs. Its quite lengthy and comprehensive declaratory judgment and permanent injunction repeated the terms of the prior decrees against the SFUSD. The court also directed the state to provide services directly when, in any individual case, a local educational agency is unable or unwilling to provide eligible students with a free appropriate public education as mandated by the EAHCA. Finally, the court enjoined the state either to promulgate a policy or set of regulations on the disciplining of handicapped students, or to establish a system of monitoring to ensure local compliance with federal requirements. *See* C.R. item 304, *reprinted in* Appendix B, *infra.*

Upon plaintiffs' request, the district court agreed to reconsider its earlier ruling regarding the state's Eleventh Amendment

immunity from a damage action. After entertaining additional argument on the question, the court concluded that it did not have to reach the issue of immunity because the plaintiffs had "failed to make a showing that they [had] in fact suffered damages which could be the subject of an award by this court against [the state]." C.R. item 311. The court entered its order denying relief on May 24, 1984.

All the parties timely filed their appeals. The SFUSD challenges the district court's declaratory judgment and injunction of December 2, 1983. The state appeals from the declaratory judgment and injunction of April 23, 1984. Doe and Smith take their cross-appeal from the order of May 24, 1984.

## III.

### ANALYSIS OF THE APPLICABLE STATUTORY STRUCTURE

A. *Section 504*

■ Section 504 of the Rehabilitation Act, to which our attention must first be directed, provides in relevant part that "[n]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794 (1982). The plaintiffs referred to this general antidiscrimination provision in their complaints, and the district court cited it as justification for its injunctive relief and declaratory judgments. We must hold that the district court erred in doing so. As the Supreme Court stated in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984):

> Even assuming that the reach of § 504 is coextensive with that of the EHA, there is no doubt that the remedies, rights, and procedures Congress set out in the EHA are the ones it intended to apply to a handicapped child's claim to a free appropriate public education. We are satisfied

that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA by resort to the general antidiscrimination provision of § 504.

*Id.,* 104 S.Ct. at 3473. The plaintiffs' claims are not cognizable under section 504. *See Alexopulos v. Riles,* 784 F.2d 1408, 1412 (9th Cir.1986). All references to section 504 should be stricken from the injunctions and the declarations of rights. The district court's judgments must stand or fall by reference to the EAHCA alone.

B. *The EAHCA*

As *Smith v. Robinson* indicates, Congress enacted the EAHCA in order to help remedy the inadequacy of the educational services provided to the nation's handicapped children. *See* 104 S.Ct. at 3468–69; 20 U.S.C. § 1400(b) (1982). The Act provides states with substantial federal funding for use in special education, but conditions receipt of such monies on each state's compliance with numerous specific federal requirements. Foremost among these is the requirement that a state have in effect "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412 (1982). According to the Act, a "free appropriate public education" is

> special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with [an] individualized education program.

*Id.* § 1401(18).

As the Supreme Court has stated, the individualized educational program—or "IEP"—is the EAHCA's modus operandi. *Burlington School Committee v. Department of Education,* — U.S. —, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). An IEP is a written program of educational goals and services, tailored to meet the

child's unique needs, that is developed at an IEP meeting according to the proper procedures. *See Board of Education v. Rowley,* 458 U.S. 176, 181–82, 102 S.Ct. 3034, 3037–38, 73 L.Ed.2d 690 (1982); 20 U.S.C. § 1401(19); *id.* § 1415 (1982); 34 C.F.R. §§ 300.340–.349 (1985). The special education provided the child must comport with his or her IEP, *Rowley,* 458 U.S. at 203, 102 S.Ct. at 3049, and no such services may be provided until an IEP is "in effect." 34 C.F.R. § 300.342(b)(1) (1985).

In addition to the requirement of an IEP, the EAHCA and its implementing regulations establish a number of procedural safeguards for the benefit of parents. *See* 20 U.S.C. § 1415 (1982); 34 C.F.R. §§ 300.-501–.589 (1985). These include the right to written notice whenever the agency proposes (or refuses) to initiate change in a child's educational program or placement, ·*see* 20 U.S.C. § 1415(b)(1)(C) (1982), the right to present complaints and receive an impartial due process hearing on any matter relating to the provision of a free appropriate public education, *see id.* § 1415(b)(1)(E)–(b)(2), the right to bring an action in state or federal district court to challenge any final decision of a state educational agency on such a matter, *see id.* § 1415(e)(2), and the right to

insist that their child "remain in [his or her] then current educational placement" during the pendency of review proceedings, *id.* § 1415(e)(3). These procedures ensure parental involvement in the administrative process and enable parents to challenge agency action that they regard as inappropriate or inadequate. *See Burlington School Committee,* 105 S.Ct. at 2002. It is out of the clash between these rights and those traditionally accorded public school officials that this case arises.

## IV.

### DISTRICT COURT RULINGS REGARDING DISCIPLINARY MATTERS

The defendants object to substantial portions of the district court's detailed rulings regarding disciplinary measures. Their general complaint is that the district court's commands exceed the reach of the EAHCA. In the interest of clarity, we summarize the challenged propositions as follows: [7]

(1) Handicapped children may not be expelled or excluded from school for any misbehavior that is a manifestation of their handicaps.[8]

---

**7.** Since the district court entered its judgments, the California legislature has amended and recodified the portion of the Education Code dealing with student discipline. Although we do not think that the actions of the California legislature have rendered the district court's judgments moot, these actions do make it difficult to relate the district court's pronouncements to the present case. *See, e.g., supra* note 6. For the sake of clarity, therefore, we shall henceforth describe and assess the district court's pronouncements on the Education Code provisions as if the court were addressing its remarks to the provisions of the current code. No substantive consequences will flow from this practice.

**8.** The district court usually used the term "conduct that is a manifestation of the child's handicap" to describe the kind of student misbehavior that has a "protected" status under the EAHCA. To avoid awkward circumlocutions or monotony in this opinion, we have sometimes used other terms such as "conduct that arises from the handicap," "conduct that is caused by the handicap," and "handicap-related misconduct." As we use them, these phrases are terms intended to mean the same thing. They refer to conduct that is caused by, or has a direct and

substantial relationship to, the child's handicap. Put another way, a handicapped·child's conduct is covered by this definition only if the handicap significantly impairs the child's behavioral controls. Although this definition may, depending on the circumstances, include the conduct of handicapped children who possess the raw capacity to conform their behavior to prescribed standards, it does not embrace conduct that bears only an attenuated relationship to the child's handicap. An example of such attenuated conduct would be a case where a child's physical handicap results in his loss of self-esteem, and the child consciously misbehaves in order to gain the attention, or win the approval, of his peers. Although such a scenario may be common among handicapped children, it is no less common among children suffering from low self-esteem for other, equally tragic reasons.

We note that recently enacted section 48915.5 of the California Education Code exempts from expulsion children whose conduct is "caused by" or is a "direct manifestation" of the child's handicap. Cal.Educ.Code § 48915.5(a)(2), (f) (Deering Supp.1986). We also observe that the section directs the IEP team, in making that determination, to review "the ability of the pupil

(2) Under no circumstances may handicapped children be subjected to a *total* cessation of educational services, even for misbehavior that is not handicap-related.

(3) The California Education Code provisions describing the grounds and procedures for the expulsion of regular education students are invalid under the EAHCA as applied to handicapped students.

(4) California Education Code § 48212, which allows the governing board of a school to "exclude from attendance on regular school classes any child whose physical or mental disability is such as to cause his attendance to be inimical to the welfare of other pupils," is invalid under the EAHCA.

(5) Handicapped children may not be suspended pursuant to California Education Code § 48911(g)—which provides for extended suspension pending the resolution of expulsion proceedings—for behavior that is a manifestation of their handicaps.

(6) Handicapped children may not have their educational program reduced, or be subjected to any other disciplinary procedures aside from suspensions authorized by California Education Code § 48910 (two-day suspension authorized by a teacher) or § 48911 (five-day suspension authorized by a school principal, a principal's designee, or the superintendent of schools), for any behavior or misconduct that is a manifestation of their handicaps.

(7) School districts may not ignore the EAHCA's "stay put" provision, 20 U.S.C. § 1415(e)(3) (1982), which provides that handicapped children are to remain in their current placements (unless the parents otherwise agree) pending the resolution of EAHCA-related review proceedings.

We shall address each of these propositions.

A. *Expulsion for Handicap-related Misbehavior*

■ We agree that the EAHCA prohibits the expulsion of a handicapped student for misbehavior that is a manifestation of his handicap. This proscription, although nowhere directly stated in the EAHCA, may be inferred from the Act's history, purpose, terms, and accompanying regulations. *See Kaelin v. Grubbs,* 682 F.2d 595, 602 (6th Cir.1982); *S–1 v. Turlington,* 635 F.2d 342, 348 (5th Cir.) (Unit B), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *Doe v. Koger,* 480 F.Supp. 225, 228 (N.D.Ind.1979).

The EAHCA was enacted in response to Congress's recognition that countless handicapped children were being denied a meaningful public education simply because states lacked the funds and the initiative to cope with the special problems involved in teaching those children. *See* 20 U.S.C. § 1400(b) (1982). Consequently, Congress endeavored to supply each state with the necessary funding, so long as each agreed to promulgate a policy "that assures *all* handicapped children the right to a free appropriate public education." *Id.* § 1412(1) (emphasis added). An "appropriate" public education is provided by a program that is "specially designed ... to meet the unique needs" of a handicapped child. *Id.* § 1401(19). It follows, we believe, that a handicapped child's unique needs and his corresponding handicap-related problems cannot form the basis for denying the educational services that the EAHCA was designed to foster.

■ This conclusion presents a problem in the case of an emotionally disturbed child's aggressive and disruptive behavior. Disruptive behavior is not a monopoly of the emotionally disturbed. For these children, however, such behavior may be the direct result of the handicap—and thus may be no different in principle from the physical incapacities of an orthopedically impaired child or the cognitive difficulties of a dyslexic student. We cannot say this is not possible. Congress, having included seriously emotionally disturbed children

---

to conform his or her behavior to prescribed standards," *id.* § 48915.5(e)(2). Because the state has not had occasion to apply these standards and the California courts have not construed them, we need not consider their validity here.

within the EAHCA's definition of handicapped children, *see id.* § 1401(1), must have intended that their handicap-related misbehavior should not be a cause for a cessation of educational services.

## B. *Expulsion and Exclusion in Other Cases*

■ We do not hold, however, that a school district may never withhold educational services from a handicapped child. If the child's misbehavior is properly determined *not* to be a manifestation of his handicap,[9] the handicapped child can be expelled. *See Kaelin v. Grubbs,* 682 F.2d 595, 602 (6th Cir.1982); *S–1 v. Turlington,* 635 F.2d 342, 348 (5th Cir.) (Unit B), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *Doe v. Koger,* 480 F.Supp. 225, 228 (N.D.Ind.1979). This conclusion does not conflict with the EAHCA. When a child's misbehavior does not result from his handicapping condition, there is simply no justification for exempting him from the rules, including those regarding expulsion, applicable to other children. Therefore, when a handicapped child is properly expelled, the school district may cease providing all educational services—just as it could in any other case. To do otherwise would amount to asserting that all acts of a handicapped child, both good and bad, are fairly attributable to his handicap. We know that that is not so.

## C. *The California Education Code Provisions on Expulsion of Regular Education Students*

■ It follows that the district court was correct in holding that the California Education Code provisions relating to the expulsion of regular education students are invalid under the EAHCA as applied to handicapped pupils. The provisions enumerating the substantive grounds for expulsion, *see* Cal.Educ.Code §§ 48900, 48915 (Deering Supp.1986), are defective because they fail to make exceptions for students whose misconduct is handicap-related. *See* discussion *supra.*

■ Moreover, the procedures for securing an expulsion are invalid. Expulsion constitutes a "change in placement" within the meaning of the EAHCA. *See Kaelin,* 682 F.2d at 598–602; *S–1,* 635 F.2d at 348. Consequently, school officials seeking to expel a handicapped student must follow the procedures prescribed in the Act and its accompanying regulations for changing a handicapped student's placement. These procedures include (1) notifying the parents in writing of the educational agency's intention to seek expulsion, *see* 20 U.S.C. § 1415(b)(1)(C)(i) (1982); (2) convening an IEP team meeting to assess the reason for the misconduct and the appropriateness of the child's current educational placement, *see id.* § 1401(18); 34 C.F.R. §§ 300.-342–.343 (1985); (3) conducting an independent evaluation of the pupil's educational needs (because expulsion constitutes a *significant* change in placement), *see* 20 U.S.C. § 1415(b)(1)(A) (1982); 34 C.F.R. § 104.35 (1985); (4) informing the parents of their right to demand both impartial administrative review of any IEP team decisions and judicial review of the state's final administrative determination, *see* 20 U.S.C. § 1415(b)(1)(D) (1982); and (5) allowing the child to remain in his then–current educational placement pending resolution of any previously mentioned review proceedings, unless the parents otherwise agree, *see id.* § 1415(e)(3). Because the expulsion procedures for regular education students do not impose these special requirements, they are inapplicable to handicapped children.

Our analysis to this point assumes the ability to distinguish between handicap-related and handicap-unrelated behavior by means of the processes and safeguards applicable to handicapped students under the EAHCA. This is an assumption that Congress requires us to make. Although we have no doubt that the distinction exists, we recognize readily the difficulty in distin-

---

**9.** A "proper determination" is one that is arrived at by an IEP team according to the correct procedures, *see* discussion *infra,* or, if applicable, by a hearing officer or court on review.

guishing between the two types of behavior in practice. Still, by receiving federal funds a state assumes that burden: those who accept the sovereign's pay cannot complain of his terms of acceptance.

### D. *California Education Code § 48212*

The defendants seek to refute our conclusions by invoking California Education Code § 48212, which provides that "[t]he governing board of the school may exclude from attendance on regular school classes any child whose physical or mental disability is such as to cause his attendance to be inimical to the welfare of other pupils." Cal.Educ.Code § 48212 (Deering 1978). Defendants argue that this statutory provision does not violate the EAHCA and that the district court erred in declaring otherwise.

First, they contend that section 48212 can be harmonized with federal standards by construing it to refer only to disabilities that are not covered by the EAHCA. But what disabilities are those? The definition of "handicap" for the purposes of the EAHCA, *see* 20 U.S.C. § 1401(1) (Supp. I 1983); *supra* note 2, is nothing if not comprehensive. A section 48212 that refers only to those disabilities not protected by the EAHCA would be a section irrelevant for the purposes of this case. We reject this construction.

Defendants also suggest that the statutory term "disability" might be interpreted to cover only contagious diseases, and that the exclusion of children afflicted with such diseases would not violate the EAHCA. Our difficulty with this argument is twofold. First, such a narrow construction of the term "disability" is plainly contrary to common usage. Second, possession of a contagious disease is a specifically enumerated ground for exclusion under a separate statutory provision, *see* Cal.Educ.Code § 48211 (Deering 1978). We think it unlikely that the legislature would have re-

stated ambiguously an authorization it had elsewhere made explicit.

Defendants argue finally that the child's exclusion from *regular school* classes under section 48212 does not necessarily mean that he will be excluded from receiving an "appropriate public education." We acknowledge that the EAHCA does not compel localities to place handicapped students in regular education classes, but only in the least restrictive setting consistent with their needs and those of other students. *See* 20 U.S.C. § 1412(5)(B) (1982); 34 C.F.R. § 300.552 comment (1985) (quoting 34 C.F.R. Part 104, app. A, at ¶ 24 (1985)). Nonetheless, section 48212 is fatally defective on procedural grounds. Like expulsion, "exclusion" from regular school classes constitutes a "change in placement" that triggers the EAHCA's procedural requirements and safeguards, *see* 20 U.S.C. § 1415 (1982)—including the necessity to make placement decisions through the vehicle of the IEP team, *see id.* § 1401(19); § 1412(5)(B); 34 C.F.R. §§ 300.-340–.346 (1985). Section 48212 ignores these strictures. But it is precisely these strictures that are binding on school officials. Section 48212 cannot relieve them of this burden.

### E. *Suspension Pursuant to Expulsion Proceedings*

The school authorities in this case appear to have relied on California Education Code § 48911(g), which authorizes school district superintendents or their designees, under certain circumstances,[10] to extend a student's suspension indefinitely pending resolution of expulsion proceedings against him. The defendants apparently concede that the district court was justified in finding this provision invalid as applied to Doe and Smith. Neither could have been expelled for their admittedly handicap-related misconduct; nor, as a con-

---

**10.** An extension of suspension may be granted "only if the superintendent or the superintendent's designee has determined, following a meeting in which the pupil and the pupil's parent or guardian are invited to participate, that the presence of the pupil at the school or in an alternative school placement would cause a danger to persons or property or a threat of disrupting the educational process." Cal.Educ.Code § 48911(g) (Deering Supp.1986).

sequence, could they lawfully have been suspended in conjunction with expulsion proceedings. The defendants argue, however, that the provision is not necessarily invalid in all cases involving handicapped students.

We agree. Once an IEP team (or a hearing officer or court if review is sought) has properly determined that the misconduct at issue was not handicap-related, a handicapped child is subject to suspension during the pendency of any ensuing expulsion proceedings. Section 48911(g) does not, however, obviate the duty to make such a preliminary determination.

## F. *Other Disciplinary Measures*

In what are surely the most troublesome portions of its two judgments, the district court ruled that handicapped children may not have their programs reduced, or be subjected to any other disciplinary measures save the two- and five-day suspensions authorized by sections 48910 and 48911 of the California Education Code, for conduct that is a manifestation of their handicaps. We believe this statement of law is overly broad.

▆▆ A brief review of the principles we have recognized will be useful at this point. Under the EAHCA: (1) handicapped children may not be deprived of a free appropriate public education as a result of handicap-related misconduct, and (2) changes in a handicapped child's placement may be effected only through the EAHCA's unique procedural mechanisms. These principles do not immunize handicapped children from all discipline. School officials dealing with misbehaving handicapped children may freely employ reasonable disciplinary measures that neither work a deprivation of an appropriate public education nor are substantial enough to constitute "changes in placement" within the meaning of the Act.

▆▆ The two- and five-day suspensions approved by the district court clearly meet

both these criteria and are therefore valid. But such suspensions do not exhaust the types of disciplinary measures that are permissible. Informal and reasonable disciplinary measures that are less substantial—the sort that teachers and principals have traditionally used to maintain order in the classroom—are similarly inoffensive under the EAHCA.

▆▆ When one ventures beyond these informal measures and the two- and five-day suspensions the district court approved, the path becomes dim and indistinct. At the time the district court's judgment was entered, California had no statutes authorizing suspensions of fixed duration in excess of five days. The district court obviously was justified in forbidding school officials from effecting ad hoc, unauthorized suspensions for longer periods. Recently, the California legislature added section 48912 to the Education Code. That provision empowers the governing board of a school district to suspend a student for as many as twenty, and in special cases thirty,[11] consecutive days during a school year. *See* Cal.Educ.Code §§ 48912, 48903 (Deering Supp.1986). The district court's decree obviously does not address the validity of such suspensions.

Perhaps we should ignore the issue. There are occasions, however, when a bit of dicta, if dicta it be in this case, can conserve time and money. We believe this is such an occasion. The EAHCA provides no bright-line criteria for determining when a disciplinary measure becomes a change in placement. The question is one of degree and requires an exercise of sound judgment. We do not think that the suspension authorized by Code section 48912 amounts to either a change in placement or the deprivation of an appropriate public education. Therefore, we believe it to be valid. Several factors influence our decision. First, section 48912 establishes a "normal" procedure that does not single out handicapped students for adverse treatment.

---

**11.** If, "for purposes of adjustment, a pupil enrolls in or is transferred to another regular school, an opportunity school class, or a contin-uation education school or class" the period of suspension may extend to 30 days. *Id.* § 48903.

*See* 34 C.F.R. § 300.513 comment (1985) ("While the placement may not be changed [absent EAHCA procedures], this does not preclude the agency from using its *normal* procedures for dealing with children who are endangering themselves or others." (emphasis added)). Second, the suspension period is fixed and temporary. Third, it gives school officials some needed breathing space for developing strategies to cope with the child during the pendency of any ensuing review proceedings.

In reaching this determination, we do not denigrate the value of a month's worth of school days. As the Supreme Court has recognized, the loss of even ten school days is a significant enough deprivation to necessitate procedural due process protections. *See Goss v. Lopez,* 419 U.S. 565, 572–76, 95 S.Ct. 729, 735–37, 42 L.Ed.2d 725 (1975). Serious though it may be, however, such a deprivation is not, in our view, so substantial as to constitute a "change in placement" or a loss of a "free appropriate public education" within the meaning of the EAHCA.

### G. *The "Stay-Put" Provision*

The EAHCA's "stay put" provision, 20 U.S.C. § 1415(e)(3) (1982), provides that "[d]uring the pendency of any [review proceedings under the EAHCA], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child." Relying on this provision, the district court enjoined the defendants from "denying handicapped pupils their right to remain in their current placement pending resolution of the issues [relating to the cause of a handicapped student's misconduct] and of any proceedings relating to placement and provision of a free appropriate public education, unless the parents or guardian and the [local educational agency] otherwise agree." C.R. item 272 (Judgment Against the SFUSD); *accord* C.R. item 304 (Judgment Against the State). Defendants argue that this part of the judgment—which in fact closely tracks the language of 20 U.S.C.

§ 1415(e)(3) just quoted—is in conflict with a school's uncontested power to suspend even a handicapped pupil for up to five days.

■ As should be clear, we believe this conflict does not exist. Five-day suspensions of handicapped pupils are unobjectionable under the EAHCA precisely because such suspensions do not rise to the level of changes in placement within the meaning of the Act. It follows that such suspensions do not conflict with the "stay put" provision of 20 U.S.C. § 1415(e)(3) or the district court's command that the defendants obey that provision. Nor do the suspensions authorized under section 48912 of the Education Code contravene the "stay put" command.

■ The recently enacted California Education Code section 48915.5(g) poses more complicated questions, however. Subsection (g) is part of a provision labeled "Expulsion of pupil with previously identified exceptional needs" that addresses many of the issues raised in this case. Subsection (g) provides in pertinent part that "[i]n the event that a parent demands a hearing [to challenge an IEP team decision relating to a handicapped student's misconduct], all time requirements prescribed in this article for suspension or expulsion shall be extended to include the time necessary to conclude the review or appeal of any assessment or determination." Cal.Educ.Code § 48915.5(g) (Deering Supp.1986).

This provision is in conflict with federal law. Defendants contend that it does not so conflict and cite as authority *Jackson v. Franklin County School Board,* 765 F.2d 535 (5th Cir.1985). *Jackson* involved a 17-year-old learning disabled student who had been removed from his placement and committed to a psychiatric hospital after unbuttoning the blouse of a female special education student and touching her breasts. Upon his release from the hospital and pending the development and approval of a revised IEP, the student, Jackson, sought readmission to his former educational placement. School officials denied his request, and their decision was ultimately approved

by the Fifth Circuit. The court held that, notwithstanding 20 U.S.C. § 1415(e)(2), "schools have discretion to alter a handicapped student's placement when he endangers himself or others and threatens to disrupt a safe school environment." *Jackson,* 765 F.2d at 538; *accord Victoria L. by Carol A. v. District School Board,* 741 F.2d 369, 374 (11th Cir.1984). The *Jackson* court's decision relied heavily on an earlier Fifth Circuit case, *S–1 v. Turlington,* 635 F.2d 342 (5th Cir.) (Unit B), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981). In *S–1,* the court observed that "nothing in the [EAHCA], the regulations, or the legislative history suggests that Congress intended to remove from local school boards—who alone are accountable to the entire school community—their long-recognized authority and responsibility to ensure a safe school environment." *Id.* at 348 n. 9.

Although we are sympathetic to the concerns voiced by the Fifth Circuit in *Jackson,* section 1415(e)(3) does not list any exceptions to its automatic injunction. Moreover, the comment to 34 C.F.R. § 300.-513 (1985) observes that, "[w]hile the placement may not be changed [absent EAHCA procedures], this does not preclude the agency from using its normal procedures for dealing with children who are endangering themselves or others." This passage recognizes the residual authority of school officials referred to in *S–1,* but it also indicates that such authority extends only to actions that fall short of "changes in placement."

Needless to say, this line—between residual disciplinary authority on the one hand and a "change in placement" on the other—is a difficult one to draw. We believe, however, that a palpable difference exists between a provision authorizing a fixed-term suspension and one that confers the power on school officials to suspend a student's education for an indefinite period of time. The first sets a "deadline" for the student's return to school, and thus creates a special impetus to resolve any dispute arising from disciplinary concerns; the second does not. We do not believe that Con-

gress meant to allow school officials to avoid the EAHCA's "stay-put" provision simply by making a unilateral determination that a child should be suspended indefinitely because he or she threatens to disrupt the educational process. This limitation does not leave educators helpless. They have recourse to the gamut of lesser disciplinary measures and program variations that do not rise to the level of changes in placement. Moreover, educational agencies may seek judicial relief should existing procedures prove inadequate to cope with truly exigent circumstances. In sum, we find section 48915.5(g) of the California Education Code valid only to the extent it does not conflict with the express terms of 20 U.S.C. § 1415(e)(2) (1982).

## V.

### DISTRICT COURT RULINGS REGARDING PLACEMENT PROCEDURES

The defendants object to several pronouncements of the district court regarding the procedures that must be followed to change a student's placement pursuant to the EAHCA and its regulations. Once again, we summarize the propositions to which these objections are directed:

(1) Whenever the educational agency wishes to effect any significant change in the placement, program, or services of a handicapped child in response to misconduct arising out of that child's handicap, it must first conduct an evaluation of the pupil's needs in accordance with 34 C.F.R. § 104.35 (1985).

(2) Whenever the educational agency seeks to change a handicapped child's placement in response to his misconduct, an IEP team must meet within five days of any accompanying disciplinary action in order to consider the matter.

(3) When an IEP team convenes to determine whether a child's misconduct is handicap-related and whether his IEP, if any, is appropriate and is being properly imple-

mented, team decisions are to be made according to majority rule.

### A. *Independent Educational Evaluations*

#### 1. *The district court judgment*

The defendants concede that 34 C.F.R. § 104.35 (1985) requires an educational agency to conduct an evaluation of a handicapped pupil's needs before taking any action with respect to any significant change in placement. But they argue that the district court's injunction goes too far in compelling educational agencies to conduct such evaluations before "recommending or effecting any significant change of ... *program* or *services* for such handicapped pupils as a result of behavior or conduct which was a manifestation of the pupil's [sic] handicaps." Injunction of the District Court Against the SFUSD ¶ 10 (Dec. 2, 1983) (emphasis added), *reprinted in* C.R. item 272.

An examination of 34 C.F.R. § 104.35 in its entirety reveals that the defendants' argument fails. The section provides in relevant part:

> A recipient ... shall conduct an evaluation ... of any person who, because of handicap, needs ... special education or related services before taking any action with respect to the initial placement of the person in a regular or special education program and any subsequent significant change in placement.

34 C.F.R. § 104.35(a) (1985). This language embraces *any significant change* in placement. We believe that such a change occurs when there is a significant change in program or services. Our interpretation is confirmed by 34 C.F.R. § 300.551 (1985), which provides:

> (a) Each public agency shall insure that a continuum of alternative placements is available to meet the needs of handicapped children for special education and related services.
>
> (b) The continuum required under paragraph (a) of this section must:
>
> ....

(2) Make provisions for supplementary services (such as resource room or itinerant instruction) to be provided in conjunction with regular class placement.

Inasmuch as the regulations draw no stark distinctions between the terms placement, program, and services, we affirm this portion of the district court's judgment.

We do not hold, however, that every *minor* change in program or services is a change in placement triggering the EAHCA's procedural safeguards. The change must be *significant*. The line between changes in placement and certain fixed term disciplinary measures has already been identified. *See* discussion *supra*. Here we draw a similar line, *viz.* between *minor* and *significant* changes in program or services. We do so because we recognize that education is an art in which all who participate must be accorded some flexibility in their practices and relationships. The due process model of the criminal justice system should not be our guide in fashioning these practices and relationships.

#### 2. *California Education Code § 48915.5(e)*

Despite the value we place on flexibility in the educational setting, we acknowledge that when a change in placement, program, or services is significant, the flexibility countenanced by the EAHCA is diminished and strict procedures apply. This truth emerges from the plaintiffs' contention that newly enacted section 48915.5 of the California Education Code too narrowly construes the independent evaluation requirement. Subsection (e) of that provision directs IEP teams, in determining whether a handicapped pupil should be expelled, to consider "recent and relevant information regarding the pupil." Cal.Educ. Code § 48915.5(e) (Deering Supp.1986). "Recent information" is defined to mean "information that has been acquired within three years of the date of the alleged misconduct." *Id.* "Relevant information" includes the following:

(1) A review of the pupil's school progress and behavior, if available, including, but not limited to, a review of the pupil's individualized educational program, teacher progress reports and comments, school health records, and school discipline records.

(2) A review of the ability of the pupil to conform his or her behavior to the prescribed standards, and a determination of the relationship, if any, between the pupil's behavior and his or her handicapping condition.

*Id.* § 48915.5(e)(1)–(2).

Although this statutorily defined class of information is relevant to the IEP team's deliberations, we agree with the plaintiffs that it is conspicuously incomplete. As we indicated above, before an IEP team can recommend a handicapped student for expulsion proceedings, it *must* consider the results of an independent educational evaluation conducted in accordance with the guidelines of 34 C.F.R. § 104.35 (1985). To the extent that section 48915.5 of the California Education Code might be thought to direct otherwise, it is invalid.

### B. *Five-day Deadline*

▮▮▮▮ Defendants strongly complain about the ruling that an IEP team must convene within five days of an educational agency's decision to seek a handicapped pupil's expulsion for misconduct. The five-day deadline, they assert, is impractical, unreasonable, and an economic hardship. They also argue that the requirement finds no support in the statute or regulations. Here the defendants are on solid ground.

Defendants correctly observe that an IEP team is unequipped to evaluate the source of a handicapped student's misconduct until it has obtained the results of a comprehensive evaluation conducted in accordance with 34 C.F.R. § 104.35 (1985). Such an evaluation can be generated in five days only in an unusual case. It would be pointless to require an IEP team to convene before the evaluation is at hand. Moreover, IEP teams consist of at least two school officials in addition to the par-

ents, and may, at the parents' or agency's discretion, include other interested parties. *See* 20 U.S.C. § 1401(19) (1982); 34 C.F.R. § 300.344 (1985). It is unrealistic to assume that all these parties will be able to attend an IEP meeting on five days' notice. Furthermore, an inflexible five-day deadline serves no useful function. The "stay-put" provision, 20 U.S.C. § 1415(e)(3) (1982), provides schools with sufficient incentive to convene IEP teams swiftly when student misconduct creates problems.

Finally, nothing in the statute or regulations appears to warrant the five-day deadline. Applicable laws indicate only the following occasions when an IEP team must meet subsequent to an initial placement: (1) at least once a year to review the child's IEP, *see* 34 C.F.R. § 300.343(d) (1985); (2) within 30 days after a parent requests such a meeting, *see* Cal.Ed.Code § 56343.5 (Deering Supp.1986); and (3) whenever the local educational agency wishes to change the child's educational placement (no time limit specified), *see* 34 C.F.R. § 300.504 comment 1 (1985). The five-day deadline cannot be inferred from these provisions.

We recognize that the district court has broad discretion to fashion appropriate remedies for violations of the EAHCA. *See Burlington School Committee v. Department of Education,* —— U.S. ——, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985); 20 U.S.C. § 1415(e)(2) (1982). Nonetheless, it has no authority to impose this five-day deadline.

### C. *Majority Rule*

▮▮▮▮ The defendants challenge vigorously the district court's ruling that when an IEP team convenes to review proposed changes in placement in response to misconduct, decisions shall be made by majority rule. They argue instead that such decisions are to be made by consensus. The parties raise a fundamental issue to which, surprisingly, there is no clear answer.

The majority-rule view draws no express support from any relevant authorities. Moreover, such a policy seems inconsistent with the liberal provisions for expansion of

IEP team membership. The regulations, to illustrate, provide that either parents or the agency may, at their discretion, invite additional persons to attend IEP meetings. *See* 34 C.F.R. § 300.344 (1985). This eliminates a key prerequisite to the utilization of majority rule, *viz.* a body having a fixed and specific number of members during the pendency of the issue sought to be resolved. Majority rule with a floating membership would encourage both sides in an IEP dispute to attempt to "stack the deck" by inviting numerous additional participants who shared the same views. It is inconceivable to us that Congress intended such a result. Therefore, we reverse the district court's judgment regarding majority rule.

A question remains, however, as to what principle of decisionmaking should be employed. Decision by consensus has little utility with respect to issues whose intensely emotional nature makes reconciliation impossible. Perhaps the local educational agency has the power, after consulting with other IEP team members, to resolve any IEP issue that arises after an initial placement.[12] In natural opposition to this position stands the interests of the parents. Although the EAHCA clearly envisions an active participatory role for parents in the placement process, *see Burlington School Committee,* 105 S.Ct. at 2002; 20 U.S.C. § 1401(19) (1982); *id.* § 1412(7); *id.* 1415(b)(1)(A), the Act nowhere explicitly vests them with a veto power over any proposal or determination advanced by the educational agency regarding a change in placement.

Despite its questionable utility for dealing with strongly contested issues, the con-sensus principle is supported by the EAHCA's implementing regulations and their accompanying comments. For example, Appendix C to Part 300 of 34 C.F.R. states that the purpose of an IEP meeting is to enable parents and school personnel, "as equal participants, to jointly decide what the child's needs are, what services will be provided to meet those needs, and what the anticipated outcomes may be." 34 C.F.R. pt. 300, app. C, at 68 (1985). The Appendix later states that an IEP is "in effect" when, among other things, that IEP "is regarded *by both the parents and agency* as appropriate in terms of the child's needs, specified goals and objectives, and the services to be provided." *Id.* at 71 (emphasis added). Still later, in addressing the role of the parents at an IEP meeting, the Appendix explains that

> [t]he parents of a handicapped child are expected to be equal participants along with school personnel, in developing, reviewing, and revising the child's IEP. This is an active role in which the parents (1) participate in the discussion about the child's need for special education and related services, and (2) join with the other participants in deciding what services the agency will provide to the child.

*Id.* at 77.

Finally, the regulations provide that *either* a parent or a public agency may initiate an impartial due process hearing pursuant to 20 U.S.C. § 1415(b)(1)(E)–(b)(2) (1982) if dissatisfied with the results of IEP team discussions or with other placement matters.

However, the Supreme Court's opinion in *Burlington School Committee v. Depart-*

---

12. Parental consent must be obtained prior to the "[i]nitial placement of a handicapped child in a program providing special education and related services," 34 C.F.R. § 300.504(b)(1) (1985), unless the educational agency obtains an override through the applicable administrative procedures, *see id.* § 300.504(c). After the initial placement, parental consent is not required "as a condition of any *benefit* to the parent or child." *Id.* § 300.504(b)(2) (emphasis added). Significantly, this consent provision does not address the conditions for imposing "detri-ments" on the parent or the child. Comment 1 to the provision states that "[a]ny changes in a child's special educational program, after the initial placement, are not subject to parental consent under Part B, but are subject to the prior notice requirement in paragraph (a) and the individualized education program requirements in Subpart C." *Id.* § 300.504 comment 1. This elaboration is unhelpful in clarifying the parents' role with respect to changes in placement.

*ment of Education,* —— U.S. ——, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), qualifies the "consensus" inference. In discussing parents' participatory role in developing IEPs for their children, the Court observed that Congress, "[a]pparently recognizing that this cooperative approach would not always produce a consensus between the school officials and the parents, and that in any dispute the school officials would have a natural advantage, ... incorporated an elaborate set of what it labeled 'procedural safeguards' to insure the full participation of the parents and proper resolution of substantive disagreements." *Id.,* 105 S.Ct. at 2002.

We construe the Court's language as a recognition that, although the formulation of an IEP is ideally to be achieved by consensus among the interested parties at a properly conducted IEP meeting, sometimes such agreement will not be possible. If the parties reach a consensus, of course, the EAHCA is satisfied and the IEP goes into effect. If not, the agency has the duty to formulate the plan to the best of its ability in accordance with information developed at the prior IEP meetings, but must afford the parents a due process hearing in regard to that plan.[13] *See* 20 U.S.C. § 1415(b)(2); 34 C.F.R. pt. 300, app. C, at 68 (1985) (discussing individualized educational programs). Similarly, the parents have a right to a due process hearing should they believe that the IEP drafted by the local agency conflicts with the consensus reached at the meeting. Any party aggrieved by the findings and decisions made during such due process hearings may seek judicial review under 20 U.S.C. § 1415(e)(2).

We emphasize that parents may seek review of any decision they dislike and that, during the pendency of any such review proceedings, the child will remain in his or her current placement if the parents so desire. *See* discussion *supra.*

## VI.

## THE DISTRICT COURT RULINGS REGARDING THE REDUCTION OF SMITH'S SCHEDULE

### A. *Exhaustion of Administrative Remedies*

The SFUSD claims that Smith did not exhaust his administrative remedies in challenging the reduction in his schedule from a full- to a half-day program. The SFUSD then asserts that the district court for that reason should have refused to consider that challenge. We disagree.

Most courts, it is true, have recognized that a plaintiff must exhaust his administrative remedies under the EAHCA before he can maintain a suit in federal court. *Timms v. Metropolitan School District,* 722 F.2d 1310, 1316–17 (7th Cir.1983); *see, e.g., Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981). Nonetheless, courts will not enforce this general rule in cases where administrative relief would be futile or inadequate. *See Wilson v. Marana Unified School District No. 6,* 735 F.2d 1178, 1181 (9th Cir.1984); *Monahan v. Nebraska,* 645 F.2d 592, 597 (8th Cir.1981).

The SFUSD maintains that this exception is not available to Smith because he neither alleged in his complaint, nor offered proof, that administrative review would have been futile or inadequate. The SFUSD's conduct in this case justified the excusing of Smith's failure. Although the SFUSD now concedes that the reduction in Smith's schedule was a "change in program" subject to

---

**13.** Our interpretation would seem to be confirmed by close attention to the actual provisions detailing procedural safeguards. For instance, section 1415(b)(1)(C) provides that the agency shall give parents

 written prior notice ... whenever such agency or unit—
 (i) *proposes* to initiate or change, or
 (ii) *refuses* to initiate or change, the identification, evaluation, or educational place-

ment of the child or the provision of a free appropriate public education to the child.
20 U.S.C. § 1415(b)(1)(C) (1982) (emphasis added). Moreover, contrary to the regulations, the statute appears to grant only parents—and not the educational agency—the right to petition for an administrative due process hearing. *See id.* § 1415(a); *id.* § 1415(b)(1)(E).

the procedural safeguards (including administrative review) detailed in 20 U.S.C. § 1415 (1982), school officials did not initially so characterize it. The SFUSD completely failed to perform its statutory duty to notify Smith's grandparents of the change in a manner that would fully inform them of all available safeguards and avenues of review, *see* 20 U.S.C. § 1415(b)(1)(D) (1982).

Under these circumstances, we will not penalize an aggrieved party. As the court stated in *Christopher T. v. San Francisco Unified School District,* 553 F.Supp. 1107 (N.D.Cal.1982):

> The evaluation procedures under [the EAHCA], and the safeguards available in connection with those procedures, were intended to protect parents and children whom the responsible local agency has treated unfairly; they were not intended . . . to insulate the agency from federal court review of its conduct.

*Id.* at 1117.

### B. *The Merits*

Turning to the merits, we must decide whether the district court erred in ruling that the SFUSD violated appellee Smith's rights when it reduced his full-day schedule to a part-day schedule without first convening an IEP team meeting. Smith's IEP, the SFUSD argues, was specifically designed to be flexible enough to accommodate a reduction in program under the circumstances of this case. *See* discussion of facts, *supra.* If this be true, the reduction did not violate the EAHCA's procedural dictates. Smith, on the other hand, argues that the reduction was a partial expulsion because it was implemented in furtherance of disciplinary goals. Such an expulsion would constitute a violation of the EAHCA.

We reject the "partial expulsion" characterization. Proper conduct and education are inextricably intertwined. Misconduct is a signal that a child's current placement is inappropriate. As a comment to the regulations observes, "where a handicapped child is so disruptive in a regular classroom that the education of other students is sig-

nificantly impaired, the needs of the handicapped child cannot be met in that environment." 34 C.F.R. § 300.552 comment 1 (1985). Thus, a reduction in program, even when based upon misconduct arising from a child's handicap, is not necessarily violative of the EAHCA. Such a reduction is valid in principle if it is contemplated by the child's IEP and tied to valid educational goals.

Nonetheless, we do not approve the manner in which the SFUSD reduced Smith's schedule in this case. The SFUSD has conceded that the reduction, even if contemplated by Smith's IEP, constituted a change in placement subject to some EAHCA safeguards. By implementing the reduction without formally notifying Smith's grandparents of their right to protest and secure review, SFUSD violated Smith's rights.

We recognize that there is a need for some flexibility in IEPs, but we also recognize the legitimate flexibility cannot be a tool for circumventing the EAHCA's protections. Before the school may effect a reduction in schedule or any other change in placement contemplated by the IEP, it must notify the child's parents of their right to review, and otherwise afford them the safeguards to which they are entitled. The operative concept here is "change in placement."

### VII.

### DISTRICT COURT RULINGS AFFECTING THE DUTIES OF THE STATE EDUCATIONAL AGENCY

#### A. *Duty To Provide Services Directly*

The state contends that the district court erred in enjoining it to provide services directly whenever, in any individual case, it determines that a local educational agency is unable or unwilling to maintain programs of free appropriate public education for handicapped students. According to the state, section 1414(d) of the EAHCA requires it to provide services directly, not in individual instances of local inaction, but only when localities maintain

no programs of special education whatsoever.

We think the state conceives its role under section 1414(d) too narrowly. When read in its entirety, the provision imposes on the state a broader duty. Although the state stresses the language in 20 U.S.C. § 1414(d)(1) (1982) that speaks of the state's responsibility for direct action when the locality fails to maintain "programs" of free appropriate education, section 1414(d)(3) specifically requires direct action when a local education agency "has *one or more* handicapped children who can best be served by a regional or State center designed to meet the needs of such children." *Id.* § 1414(d)(3) (emphasis added). It would seem incontrovertable that, whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child "can best be served" on the regional or state level. *See Kruelle v. New Castle County School District*, 642 F.2d 687, 696–99 (3d Cir.1981) (holding that the district court did not err in assigning to the state board of education the responsibility of providing a child with an appropriate public education); *Georgia Association of Retarded Citizens v. McDaniel*, 511 F.Supp. 1263 (N.D.Ga.1981) (holding that 20 U.S.C. § 1414(d) places the responsibility on the state educational agency either to make sure that local agencies provide adequate educational services to handicapped children, or to provide directly such services themselves), *aff'd*, 716 F.2d 1565 (11th Cir. 1983), *vacated on other grounds*, — U.S. —, 104 S.Ct. 3581, 82 L.Ed.2d 880 (1984); *cf. S-1 v. Turlington*, 635 F.2d 342, 350 (5th Cir.) (Unit B) (holding that a state agency can be enjoined to intervene directly in a local expulsion proceeding), *cert. denied*, 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981).

Although the state has broad responsibilities under the EAHCA, those responsibilities are not absolute. The state is not obliged to intervene directly in an individual case whenever the local agency falls short of its responsibilities in some small regard. The breach must be significant (as in this case), the child's parents or guardian must give the responsible state officials adequate notice of the local agency's noncompliance, and the state must be afforded a reasonable opportunity to compel local compliance.

## B. *Duty To Promulgate a Policy or Institute Monitoring Procedures*

### 1. *The district court judgment*

■ The state also takes issue with the portion of the district court's judgment enjoining the state either to draft a policy on the disciplining of handicapped students that complies with the EAHCA or to develop a procedure for monitoring the compliance of local educational agencies. The state defendants contend that the EAHCA does not require them to promulgate such a policy, that they voluntarily submitted a policy to the district court before it issued its judgment, and that the state has at all relevant times had a federally approved monitoring plan.

We do not find any of these arguments persuasive. The EAHCA expressly provides that, in order to qualify for federal assistance, a state must have in effect "a policy that assures all handicapped children the right to a free appropriate public education." *See* 20 U.S.C. § 1412(1) (1982). The district court concluded that the state's disciplinary procedures for regular education students were not adequate to protect the rights of handicapped students under the EAHCA, and that this gap in state policy contributed to the violation of the plaintiffs' rights by the SFUSD. We agree. We also think that the policy later submitted to the district court by the state was completely inadequate in light of the standards we enunciate today. Finally, the state's monitoring procedure was demonstrably insufficient to protect the rights of handicapped students such as Smith and Doe. In this regard, it is immaterial that the executive branch approved the state's overall plan for handicapped children. The EAHCA empowers a reviewing court to decide independently whether state and local procedures satisfy federal require-

ments. *See* 20 U.S.C. § 1415(e)(2) (1982). When it finds a violation, a court may grant "such relief as [it] determines is appropriate." *Id.* We believe the district court acted well within its scope of discretion in fashioning the remedy it did.

### 2. *The new state legislation*

As previously discussed, the state recently enacted legislation dealing with the disciplining of handicapped children. *See* Cal. Educ. Code § 48915.5 (Deering Supp.1986). This legislation takes significant strides toward satisfying the terms of the district court's injunction and bringing state law into compliance with the EAHCA. As we held earlier, however, sections 48915.5(e) and 48915.5(g) of the new law are violative of the EAHCA and its regulations. The state must revise these provisions in accordance with the relevant principles of this opinion.

### VIII.

### DISPOSITION OF PLAINTIFFS' DAMAGE CLAIMS

Doe and Smith challenge on cross-appeal the district court's dismissal of their damage claims. These claims fall into four categories: (1) EAHCA claims against the state; (2) section 504 claims against the state; (3) section 1983 claims against the state; and (4) section 504, section 1983, and EAHCA claims against ex-Superintendent Wilson Riles in his individual capacity.

### A. *EAHCA Claims Against the State*

The plaintiffs argue that the district court dismissed their EAHCA damage claims against the state based on an erroneous standard by which to measure a valid claim under the statute. We do not reach this issue because, whatever the proper standard, we hold that the state is shielded by the Eleventh Amendment from damage liability under the EAHCA.

Doe and Smith cite two Ninth Circuit cases, *Students of California School for the Blind v. Honig*, 736 F.2d 538 (9th Cir. 1984), *vacated on other grounds*, 471 U.S.

148, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985) (per curiam) and *Department of Education v. Katherine D.*, 727 F.2d 809 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985), for the proposition that the State of California has waived its sovereign immunity with regard to the EAHCA. Although these cases formerly were controlling, they can carry no force in light of the Supreme Court's recent decision in *Atascadero State Hospital v. Scanlon*, —— U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In *Scanlon*, the Court held that the State of California is immune from suits for monetary relief under § 504 of the Rehabilitation Act. We believe the Court's reasoning compels a similar result with respect to the EAHCA.

The Court began in *Scanlon* by determining that California had not waived its general immunity to suit in federal court. Although Art. III, § 5 of the California Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as shall be directed by law," the Court held that this language did not satisfy the stringent test necessary for waiver under the Eleventh Amendment. *See id.*, 105 S.Ct. at 3147. "[F]or a State statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity," the Court explained, "it must specify the State's intention to subject itself to suit in *federal court.*" *Id.* The California Constitution did not so specify.

The Court next determined that Congress had not abrogated the states' immunity in enacting the Rehabilitation Act. *See id.* Acknowledging Congress's power to abrogate sovereign immunity pursuant to section 5 of the Fourteenth Amendment, the Court cautioned that congressional exercise of that power should be inferred only when such an intention is expressed "in unmistakable language in the statute itself." *Id.* at 3148. In the Court's estimation, the language in the Rehabilitation Act providing remedies for violations of section 504 did not meet this test. *See id.* at 3149.

Finally, the Court held that California had not tacitly consented to suit in federal

court merely because "various provisions of the Rehabilitation Act are addressed to the States" and because California "participat[ed] in programs funded under the statute." *Id.* at 3150. The Act's language, the Court concluded, "falls far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Id.*

■ *Scanlon* thus enunciated a three-step test for resolving sovereign immunity questions that we must apply: (1) Has the state expressly waived its general immunity to suit in federal court? (2) Has Congress expressed in unmistakable language in the Act its intent to abrogate states' sovereign immunity pursuant to section 5 of the Fourteenth Amendment? and (3) Does the act manifest a clear intent to condition a state's receipt of federal benefits on the state's waiver of its constitutional immunity? Applying each step of this test to the EAHCA, we conclude that California retains its sovereign immunity from damage suits.

First, California has not waived its general immunity to suit in federal court. *See Scanlon,* 105 S.Ct. at 3147. Second, Congress did not unequivocally express in the Act its intent to abrogate California's sovereign immunity. The EAHCA provision authorizing suits in federal courts provides in relevant part:

> Any party aggrieved by the findings and decision made under subsection (b) [providing for administrative review] ... shall have the right to bring a civil action ... in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

20 U.S.C. § 1415(e)(2). This language simply does not pass muster under the stringent *Scanlon* test. Third, although the EAHCA—like the Rehabilitation Act—imposes various duties on the states, it nowhere explicitly conditions their right to receive funds on their willingness to waive their sovereign immunity.

Thus, we affirm the district court's dismissal of the plaintiffs' damage claims under the EAHCA.

**B. *Section 504 Claims Against the State***

*Scanlon,* along with our earlier holding that the EAHCA provides the sole remedy for handicapped children who have been denied their right to a free appropriate public education, *see Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 3473, 82 L.Ed.2d 746 (1984); *Alexopulos v. Riles,* 784 F.2d 1408, 1411–12 (9th Cir.1986), dispose of plaintiffs' damage claims against the state under section 504.

**C. *Section 1983 Claims Against the State***

■ Doe and Smith fare no better in seeking to employ section 1983 to impose liability in damages against the state. Such claims are barred by the Eleventh Amendment. *See Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974).

**D. *Claims Against Former Superintendent Riles in his Individual Capacity***

Doe and Smith's claims against Riles in his individual capacity present somewhat more complicated problems. In their complaints, they sued Riles for damages in both his official and individual capacities pursuant to the EAHCA, section 504, and section 1983. Riles eventually pleaded qualified immunity on the claims asserted against him individually. Soon thereafter, the plaintiffs requested further discovery against Riles. The district court promptly denied the request on two grounds: first, that the plaintiffs had failed to state a claim against Riles in his individual capacity; and, second, that the deposing of Riles "would add nothing to the claim against him in his official capacity" for declaratory and injunctive relief. Order Re Further Discovery and Proceedings Re Claims Against State Defendants at 1 (Oct. 26, 1983), *reprinted in* C.R. item 265. We agree with the plaintiffs that the denial of

further discovery was tantamount to a sua sponte dismissal of their claims against Riles in his individual capacity because of their failure to state a claim upon which relief could be granted, *see* Fed.R.Civ.P. 12(b)(6).

The district court's action was grounded on the plaintiffs' implicit theory that Riles's liability stemmed from his failure to perform his official duties. The court observed that "the only plausible omission liability alleged in the complaint is defendant's failure to promulgate or implement regulations or policy." It concluded that because "nothing stated in the complaint ... suggests some conduct or omission by defendant giving rise to a common law cause of action," the plaintiffs had alleged only violations by Riles in his official capacity. *See* Order Re Further Discovery and Proceedings Re Claims Against State Defendants at 2 (citing *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir. 1981), *aff'd,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983)), *reprinted in* C.R. item 265.

We sustain the district court's holding, but on somewhat more fully developed grounds. The claims based on section 504 were subject to dismissal for the reasons already discussed, *viz.* that the EAHCA supersedes section 504 in regard to claims alleging a denial of the right to a free appropriate public education. *See Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 3473, 82 L.Ed.2d 746 (1984); *Alexopulos v. Riles,* 784 F.2d 1408, 1411–12 (9th Cir. 1986).

The remaining claims—EAHCA claims, section 1983 claims based upon the EAHCA, and section 1983 claims based upon the Fourteenth Amendment right to due process—are ones with respect to which Riles at all relevant times enjoyed a qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). In *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Supreme Court clearly delineated the scope of this qualified immunity: "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Id.,* 104 S.Ct. at 3021; *accord Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738.

We do not believe that Doe and Smith can make the required *Davis v. Scherer* showing.

1. *Claims under the EAHCA and under section 1983 through the EAHCA*

As this case amply illustrates, at the time the actions against the plaintiffs took place, the effect of the EAHCA on school disciplinary matters was uncertain in this circuit. Similarly unclear were the specific duties of the responsible state agency in overseeing local agencies' compliance with the EAHCA. In the EAHCA, Congress frequently spoke as an oracle, not as the author of detailed specifications. Under these circumstances, we cannot say that Riles's omissions violated clearly established rights of the plaintiffs under the EAHCA.

2. *Independent constitutional violations*

Plaintiffs are no more successful with respect to their independent due process claims. They argue that fundamental fairness compels states to afford handicapped children procedures more involved than those the Supreme Court prescribed for other students in *Goss v. Lopez,* 419 U.S. 565, 577–84, 95 S.Ct. 729, 738–41, 42 L.Ed.2d 725 (1975). Whatever the merits of this assertion, we do not think that any such constitutional right was clearly established at the time the plaintiffs' causes of action arose.

Therefore, we hold the plaintiffs' damage claims against Riles in his individual capacity are barred by his qualified immunity.

IX.

CONCLUSION

Our examination of the EAHCA and its regulations has left us with the firm con-

viction that federal law respecting the educational rights of handicapped children is not a model of clarity. As we have indicated, the issues are exquisitely difficult. Their avoidance by Congress and administrators is understandable. Courts, however, must confront those questions fairly presented to them. The district court did thus and, although we do not agree with all of its holdings, we commend its effort.

AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED IN PART.

## APPENDIX A

### IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE, Plaintiff,

JACK SMITH, Plaintiff-Intervenor,

vs.

BILL MAHER, et al., Defendants.

Civil No. C–80–4270 MHP

### JUDGMENT

This court, having granted by Order dated June 17, 1983, a partial summary judgment to the plaintiffs herein against the San Francisco Unified School District (hereinafter "SFUSD") and other associated defendants and subsequent to the granting of said motions, issued a "Declaration and Permanent Injunction" on October 24, 1983, against the SFUSD and associated defendants, does hereby grant judgment to plaintiff John Doe and plaintiff-intervenor, Jack Smith against the defendants SFUSD, William Maher, Rosario Anaya, Jule C. Anderson, Eugene S. Hopp, Myra Kopf, Peter Mezey, Superintendent Robert Alioto, Robert Figone, Henry Caruso, Marybeth Barrett, and their legal successors in office.

Plaintiffs are granted judgment in their favor as follows:

### MONETARY DAMAGES

By stipulation between the plaintiff, John Doe and his guardian ad litem, Pauline Gonzales, and the defendant, San Francisco Unified School District, judgment is hereby entered in the amount of $1,600.00.

By stipulation between the plaintiff-intervenor, Jack Smith and his guardian ad litem, Quennie Izzo, and the defendant, San Francisco Unified School District, judgment is hereby entered in the amount of $1,600.00.

### DECLARATION OF RIGHTS

Plaintiffs, as educationally handicapped children and residents of the City and County of San Francisco:

1. Have the right to the full benefits and protection of the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983, Education for All Handicapped Children Act, 20 U.S.C. § 1401 et seq. (formerly EAHCA), § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereto;

2. Have the right to a free and appropriate public education, as defined by the EAHCA, from defendant SFUSD;

3. Have the right to education in the least restrictive environment suitable to their individual needs and with non-handicapped children to the extent appropriate within the meaning of the EAHCA;

4. Shall not have their educational program reduced, or be expelled, excluded, or subjected to any other disciplinary procedures, with the exception of suspensions authorized by California Education Code §§ 48901 and 48903(a), for any behavior or misconduct which is a manifestation of their handicaps or which arises out of their handicaps;

5. Shall not be denied or totally expelled or excluded from having any educational services whatsoever provided by the SFUSD;

6. Have the right to have the determination of appropriate education, placement, and services for them made by a specialized multi-disciplinary "IEP" team, subject to review by an impartial hearing officer;

7. Have the right to have any changes of placement effectuated in ac-

cordance with the procedures prescribed by 20 U.S.C. § 1415, 34 C.F.R. §§ 300.-340—.349 and 3000.500—.514 [sic];

8. Have the right to a written notice to their parents or guardians within a reasonable time before the SFUSD proposes to change their educational placement program or services or the provision of free appropriate public education to them, including an explanation of all procedural safeguards available to the pupil and parents, a description of why the SFUSD proposes to take the action, and a description of all options the SFUSD considered and the reasons why those options were rejected;

9. The right to a comprehensive evaluation, as required by 34 C.F.R. § 104.35, before having any significant changes in educational placement or program recommended by the SFUSD;

10. Have the right, whenever a change of placement or educational program of [sic] service is rcommended [sic] as a result of their behavior or misconduct, to have a meeting of an Individualized Education Program team, pursuant to 34 C.F.R. § 300.340—300.349, convened within 5 schooldays to determine by a majority of the IEP team whether the behavior or misconduct was a manifestation of the pupil's handicap(s) and whether the pupil's current IEP, if any, is appropriate and is being correctly implemented;

11. Have the right to remain in their current placements pending the IEP team meeting or other proposal to change the educational placement of the child or the provision of a free and appropriate public education, and all administrative and judicial reviews of its determination, unless the parent or guardian and the SFUSD agree otherwise;

12. Have the right to be free from any further disciplinary action if the IEP team determines either that the behavior or misconduct is a manifestation of or arises from the handicapping condition, or, that the IEP is not appropriate or is not being implemented correctly.

The Court further declares that:

The use of any disciplinary procedures, with the exception of 5–day suspension authorized by California Education Code § 48903(a), against handicapped children for conduct or behavior arising out of their handicap(s) violates the EHA and § 504.

California Education Code § 48900 et seq. relating to expulsion, and any state or SFUSD administrative regulation or policy promulgated pursuant thereto applied to plaintiffs as handicapped students of the SFUSD, violates the EAHCA and § 504.

The application of California Education Code § 48903(h), and any other state statutes or regulations in aid of expulsion, exclusion, or extended suspension, violates plaintiffs' rights under the EAHCA and § 504.

California Education Code §§ 48212–48214, and any state or SFUSD administrative regulation or policy promulgated pursuant thereto which purports to authorize exclusion of students from the San Francisco Unified School District on the basis of physical or mental handicaps violate the EAHCA and § 504.

### PERMANENT INJUNCTION

The Court having thus determined that the SFUSD defendants violated these rights of the plaintiffs secured by the EAHCA, Section 504, and 42 U.S.C. § 1983, permanently enjoins the SFUSD, defendants, as follows:

1. Defendants are permanently enjoined from referring, recommending, or otherwise processing such handicapped pupils for expulsion, exclusion, or disciplinary procedures, with the exception of five-day suspension authorized by California Education Code § 48903(a), as a result of behavior or misconduct which is a manifestation of or arises out of a pupil's handicap(s).

2. Defendants are permanently enjoined from extending suspensions of

handicapped pupils pursuant to California Education Code § 48903(h), or any state or local administrative regulation or policy purporting to authorize extended suspensions of handicapped pupils.

3. Defendants are permanently enjoined from referring plaintiffs for disciplinary proceedings with the exception of 5-schoolday suspensions authorized by California Education Code § 48903(a), pursuant to San Francisco Board of Education Policy No. 5114.

4. Defendants are permanently enjoined and shall convene and "IEP" team meeting within 5 schooldays whenever a change of placement or program is recommended as a result of the pupil's behavior or misconduct.

5. Defendants are permanently enjoined and shall determine by a majority of such IEP team whether the behavior or misconduct was or was not a manifestation of the pupil's handicap(s) or handicapping condition(s) and whether or not the pupil's current IEP, if any, is appropriate and is being correctly implemented.

6. If a majority of the IEP team determines that the pupil's behavior or conduct was a manifestation of the handicapping condition(s), defendants are permanently enjoined from subjecting the pupil to further disciplinary action.

7. Defendants are permanently enjoined from denying handicapped pupils their right to remain in their current placement pending resolution of the issues delineated in paragraph (6) above and of any proceedings relating to placement and provision of a free appropriate public education, unless the parents or guardian and the SFUSD otherwise agree.

8. Defendants are permanently enjoined and shall provide proper notice to parents or guardians of proposed changes of placement and changes in the provision of a free appropriate public education including, but not limited to, a description of procedural safeguards avialable to them, the action proposed by the SFUSD and the reasons therefor, the options considered, and the reason any options were rejected.

9. Defendants are permanently, [sic] enjoined from changing a handicapped student's educational placement, instruction, and/or services prior to convening an IEP team pursuant to 34 C.F.R. §§ 300.-340—.349 and to review all relevant information and recommend such changes if necessary.

10. Defendants are permanently enjoined from recommending or effecting any significant change of placement, program, or services for such handicapped pupils as a result of behavior or conduct which was a manifestation of the pupil's handicaps without first conducting an evaluation of the pupil's needs in accordance with 34 C.F.R. § 104.35,

11. Defendants are permanently enjoined from applying California Education Code §§ 48212–214 to handicapped pupils regardless of the nature or severity of their handicap(s).

12. Defendants are permanently enjoined from denying plaintiffs a free and appropriate public education in the least restrictive environment or otherwise violating the provisions of 20 U.S.C. § 1401 et seq., as amended, 29 U.S.C. § 794, or the regulations promulgated thereunder.

13. Defendnts [sic] are permanently enjoined from conducting any hearing to expel or exclude plaintiffs Doe or Smith for behavior or conduct arising from their handicaps or which is a manifestation of their handicaps.

Defendants are permanently enjoined and shall expunge any and all records and notations in their students [sic] files which refer to the unlawful and enjoined disciplinary action taken against Doe and Smith or to this lawsuit, and that attendance and credit be restored to each plaintiff for the time during which he was illegally excluded from his regular educational placement.

Incorporated herein by this reference are the Preliminary Injunction issued December 12, 1980, the Memorandum Decision issued May 25, 1982, the Order issued June

17, 1983, and the Declaration and Permanent Injunction issued October 24, 1983.

Pursuant to 29 U.S.C. § 794a and 42 U.S.C. § 1988, plaintiffs, as prevailing parties, are awarded reasonable attorneys' fees and costs in an amount to be determined upon the submission of appropriate affidavits by plaintiffs' counsel.

DATED: Dec. 2, 1983

MARILYN HALL PATEL
Judge, U.S. District Court

### APPENDIX B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF
CALIFORNIA

JOHN DOE, Plaintiff,

JACK SMITH, Plaintiff-Intervenor,

vs.

BILL MAHER, et al., Defendants.

No. C–80–4270–MHP

### ORDER AND PERMANENT INJUNCTION

Plaintiffs John Doe and Jack Smith brought this action against the San Francisco Unified School District (SFUSD), various local officials, California School Superintendent Wilson Riles individually and in his official capacity, and against the successors of those officials. Plaintiffs alleged violations of the Education Act for All Handicapped Children Act (EAHCA, 20 U.S.C. §§ 1401–1461, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the fourteenth amendment. On October 24, 1983 the court issued a Declaration and Permanent Injunction with respect to the local defendants, and both parties have now moved for summary judgment with respect to plaintiffs' claim against the State defendants. Plaintiffs seek a Declaration and Permanent Injunction with respect to the State defendants.

The parties have reached a number of stipulations and filed a joint statement of issues in conjunction with their cross motions for summary judgment. The state defendants have stipulated that in November 1980, when, without adequate proceedings having been held, plaintiffs were suspended and recommended for expulsion on the basis of actions arising out of their handicaps, there was no state policy concerning discipline of handicapped students disseminated to local educational agencies.

Having considered all of the pleadings, memoranda, and exhibits filed, as well as the oral arguments made on February 6, 1984, this court granted summary judgment to the plaintiffs against defendants Wilson Riles and his successor Bill Honig, as superintendents of the Department of Education for the State of California.

The court hereby grants plaintiffs' request for declaratory and injunctive relief against the State defendants, and declares:

### DECLARATION OF RIGHTS

Plaintiffs, as educationally handicapped children in the State of California:

1. Have the right to the full benefits and protection of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* ("EAHCA"), § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereto;

2. Have the right to a free and appropriate public education, as defined by the EAHCA, provided by their local educational agency ("LEA") and/or the State Department of Education ("SDE");

3. Have the right to education in the least restrictive environment suitable to their individual needs and with non-handicapped children to the extent appropriate within the meaning of the EAHCA;

4. Shall not have their educational program reduced, or be expelled, excluded, or subjected to any other disciplinary procedures, with the exception of suspensions authorized by California Education Code §§ 48901 and 48911(a), for any behavior or misconduct which is a manifes-

tation of their handicaps or which arises out of their handicaps;

5. Shall not as a result of behavior or misconduct which is a manifestation of their handicap be denied or totally expelled or excluded from having any educational services whatsoever;

6. Have the right to have the determination of appropriate education, placement, and services for them made by a specialized multidisciplinary "IEP" team, subject to review by the State or an impartial hearing officer;

7. Have the right to have any changes of placement effectuated in accordance with the procedures prescribed by 20 U.S.C. § 1415, 34 C.F.R. §§ 300.-340—.349 and 30000.500—.514 [sic];

8. Have the right to a written notice to their parents or guardians within a reasonable time before the LEA proposes to change their educational placement program or services or the provision of free appropriate public education to them, including an explanation of all procedural safeguards available to the pupil and parents, a description of why the LEA proposes to take the action, and a description of all options the LEA considered and the reasons why those options were rejected;

9. Have the right to a comprehensive evaluation, as required by 34 C.F.R. § 104.35, before having any significant changes in educational placement or program recommended by the LEA;

10. Have the right, whenever a change of placement or educational program of [sic] service is recommended as a result of their behavior or misconduct, to have a meeting of a multidisciplinary team, pursuant to 34 C.F.R. § 300.340—300.349, convened within 5 schooldays of the initiation of disciplinary action, to determine by a majority of the IEP team whether the behavior or misconduct was a manifestation of the pupil's handicap(s) and whether the pupil's current IEP, if any, is appropriate and is being correctly implemented;

11. Have the right to remain in their current placements pending the IEP team meeting or other proposal to change the educational placement of the child or the provision of a free and appropriate public education, and all administrative and judicial reviews of its determination, unless the parent or guardian and the LEA or State Department of Education agree otherwise;

12. Have the right to be free from any further disciplinary action if the IEP team determines either that the behavior or misconduct is a manifestation of or arises from the handicapping condition, or, that the IEP is not appropriate or is not being implemented correctly.

The court further declares that:

The use of any disciplinary procedures, with the exception of 5–day suspensions authorized by California Education Code § 48911(g), against handicapped children for conduct or behavior arising out of their handicap(s), violates the EAHCA and § 504.

California Education Code § 48900 *et seq.* relating to expulsion, and any state or local administrative regulation or policy promulgated pursuant thereto applied to plaintiffs as handicapped students, violates the EAHCA and § 504.

The application of California Education Code § 48911(g), or any other state statutes or regulations in aid of expulsion, exclusion, or extended suspension, violates plaintiffs' rights under the EAHCA and § 504, where such expulsion, exclusion, or extended suspension is based on behavior arising out of the child's handicap; and

California Education Code § 48212, and any state or local administrative regulation or policy promulgated pursuant thereto which purports to authorize exclusion of students on the basis of physical or mental handicaps violates the EAHCA and § 504.

## PERMANENT INJUNCTION

The court, having determined that the state defendants failed adequately to pro-

tect plaintiffs' rights under the EAHCA, § 504, and 42 U.S.C. § 1983, permanently enjoins the state defendants, as follows:

1. Defendants are permanently enjoined from referring, recommending, or otherwise processing such handicapped pupils for expulsion, exclusion, extended suspension or other disciplinary procedures, or from authorizing such actions, with the exception of 5-day suspensions authorized by California Education Code § 48911(a), as a result of behavior or misconduct which is a manifestation of or arises out of a pupil's handicap(s);

2. Defendants are permanently enjoined and shall require or convene an IEP team meeting within 5 schooldays whenever a change of placement or program is recommended as a result of the pupil's behavior or misconduct;

3. Defendants are permanently enjoined and shall determine or require determination by a majority of such IEP team as to whether the behavior or misconduct was or was not a manifestation of the pupil's handicap(s) or handicapping condition(s) and whether or not the pupil's current IEP, if any, is appropriate and is being correctly implemented;

4. If a majority of the IEP team determines that the pupil's behavior or conduct was a manifestation of the handicapping condition(s), defendants are permanently enjoined from subjecting the pupil to further disciplinary action or authorizing such disciplinary action based on said conduct;

5. Defendants are permanently enjoined from authorizing the denial or denying handicapped pupils their right to remain in their current placement pending resolution of the issues delineated in paragraph (4) above and of any proceedings relating to placement and provision of a free appropriate public education, unless the parents or guardian and the LEA otherwise agree;

6. Defendants are permanently enjoined and shall require or provide proper notice to parents or guardians of proposed changes of placement and changes in the provision of a free appropriate public education including, but not limited to, a description of procedural safeguards available to them, the action proposed by the LEA and the reasons therefor, the options considered, and the reason any options were rejected;

7. Defendants are permanently enjoined from authorizing a change of, or changing, a handicapped student's educational placement, instruction, and/or services prior to convening an IEP team pursuant to 34 C.F.R. §§ 300.340—.349 to review all relevant information and recommend such changes if necessary;

8. Defendants are permanently enjoined from authorizing or recommending or effecting any significant changes of placement, program, or services for such handicapped pupils as a result of the pupil's behavior or conduct which was a manifestation of the pupil's handicaps without first conducting an evaluation of the pupil's needs in accordance with 34 C.F.R. § 104.35;

9. Defendants are permanently enjoined from authorizing the application of, or applying, California Education Code § 48212 to handicapped pupils regardless of the nature or severity of their handicap(s);

10. Defendants are permanently enjoined from authorizing the denial of, or otherwise denying, plaintiffs a free and appropriate public education in the least restrictive environment or otherwise violating the provisions of 20 U.S.C. § 1401 et seq., as amended, 29 U.S.C. § 794, or the regulations promulgated thereunder;

11. Defendants are permanently enjoined from authorizing any hearing to expel or exclude plaintiffs Doe or Smith for behavior or conduct arising from their handicaps or which is a manifestation of their handicaps; and

12. The court finds that there is an absence of state policy in the following areas and that the failure to adopt policy is likely to result in continued violation of

the right of plaintiffs and other similarly situated handicapped students to a free appropriate public education as required by the EAHCA and, therefore, the state defendants are permanently enjoined:

(a) to provide services directly when, in any individual case, they determine that a local educational agency is unable or unwilling to establish and maintain programs of free appropriate public education; services shall be provided by the State directly when, for example, the local educational agency fails either to develop or implement an IEP determination, and also fails properly to appeal such determination to the State educational agency;

(b) to ensure that all local educational agencies within the State are carrying out the provisions of the EAHCA, thereby assuring that all handicapped children are receiving a free appropriate education as defined by that Act and as amplified in this injunction; to ensure local compliance the state defendants must either enact a policy or set of regulations implementing this injunction that will be binding upon the local educational agencies, or must establish a system of monitoring which is adequate to ensure that all the local educational agencies are complying fully with the EAHCA and this injunction; the state defendants are therefore enjoined to submit to the court for its approval, within sixty (60) days of the date of this order, either a proposed binding policy, regulations, or a proposed monitoring plan; said policy, regulation or plan shall include provisions for assuring compliance with ¶¶ 1—11 of this Order.

### RETENTION OF JURISDICTION

This court shall retain jurisdiction over the subjects of the complaint in this lawsuit for two (2) years from the date of this order.

IT IS SO ORDERED.