James Edward JACKSON, A Minor Joined By His Mother, Lillie R. THOMPSON, Plaintiffs-Appellants,

v.

FRANKLIN COUNTY SCHOOL BOARD, et al., Defendants-Appellees.

No. 85–4070.

United States Court of Appeals, Fifth Circuit.

July 18, 1985.

**536**

Willie L. Rose, Alexander Martin, Dale H. McDavitt, Alice Powers, McComb, Miss., for plaintiffs-appellants.

W.H. McGehee, Meadville, Miss., for defendants-appellees.

Before CLARK, Chief Judge, RANDALL and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal we address the question whether the individualized education program of a handicapped student, who is receiving a public school education under the Education for All Handicapped Children Act, may be changed pending the outcome of his administrative and judicial appeals. The district court, 606 F.Supp. 152, finding that the student's presence in public school would be disruptive to other students and the educational process, denied the student's motion to enjoin the change of his school placement. We affirm.

### I

The appellant, James Jackson, is a seventeen-year-old, learning-disabled student who has been enrolled in a special education program in the Franklin County, Mississippi, public schools since 1979 under the provisions of the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401, et seq. Jackson's educational plan provided for attendance in special education classes within the Franklin County public schools. Jackson attended classes in the same facility as nonhandicapped students and participated in extracurricular activities with nonhandicapped students.

The events leading to this appeal began in January 1984 when Jackson was involved in an incident at his high school with a female, special education student. After admitting to school authorities that he had unbuttoned the female student's blouse and touched her breasts, Jackson was suspended from school for three days. This incident also resulted in youth court proceedings against Jackson. After a hearing, and with the approval of Jackson's mother, the youth court committed Jackson to the East Mississippi State Hospital for three months for psychiatric evaluation and treatment. Jackson, however, was released from the hospital after approximately one month of treatment, and returned to live with his mother in Franklin County.

Jackson did not return to school during the remainder of the spring 1984 school semester, but actively sought readmission for the 1984 fall semester.[1] The school

---

**1.** There was much discussion both in the briefs and at oral argument concerning when Jackson actually sought readmission to school. Jackson contends that a social worker, acting on his behalf, requested readmission for him immediately after his release from the hospital, but that school officials repeatedly denied his requests for readmission both in the spring and fall of 1984. The school board contends, and the district court found, that Jackson did not seek readmission until the fall semester of 1984. Our decision makes this question irrelevant, and thus we decline to consider whether the district

district authorities, however, would not readmit Jackson as a student until an appropriate educational program for him could be devised. As a result of the school board's action, Jackson filed suit in district court under 42 U.S.C. § 1983,[2] against school officials, seeking a preliminary injunction to prevent the school board from denying him readmission, a declaration that his fourteenth amendment rights had been violated, and damages of $30,000. Jackson later amended his complaint to set forth a cause of action under the provisions of EAHCA. After a hearing on Jackson's motion, the district court ordered the parties to meet the next day to prepare an individualized education program (IEP) necessary to readmit Jackson as a student. The IEP conference was held as scheduled, and the school board offered several education alternatives at the expense of the school district, including home tutoring, vocational or job training, and semi-structured group or foster homes. Jackson and his mother, however, rejected all plans offered by the school board; they would accept no education program that did not include placement in a Franklin County public school.

Following the conference, Jackson initiated an appeal pursuant to the administrative procedure provided by EAHCA. In the interim, Jackson sought to be readmitted under his IEP in effect at the time of his suspension in January 1984, which provided for in-school placement. The school board, however, refused to place Jackson in public school pending his appeal. Insisting that he receive in-school placement, Jackson filed a second motion for preliminary injunction in district court. After conducting a hearing, the court denied Jackson's motion. In an incisive and cogent opinion, the court found that the school board's refusal to grant Jackson placement in public school pending appeal was based on the reasonable conclusion that he would disrupt the educational process and pose a threat to himself and others.[3] Jackson appeals the district court's judgment.[4]

## II

The Education for All Handicapped Children Act provides federal funds to assist states in their efforts to educate handicapped or disabled children. To qualify for federal funds under EAHCA, a state must demonstrate that it "has in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The vehicle for carrying out the statutory provisions of EAHCA is the "Individualized Education Program," which is formulated for each handicapped child at a meeting of the child's parents or guardian, the teachers, qualified representatives of the local educational agency, and, if appropriate, the handicapped child. *Doe v. Brookline School Committee*, 722 F.2d 910, 912 (1st Cir.1983); *Stacy G. v. Pasadena Independent School District*, 695 F.2d 949, 952 (5th Cir.1983). Should the parents of a handicapped child disagree with the state

court's finding in this respect is clearly erroneous.

**2.** Our decision in this appeal is strictly limited to Jackson's claim under EAHCA, 20 U.S.C. § 1415(e)(3). EAHCA may not be claimed as a basis for a section 1983 action and Jackson has asserted no constitutional claims independent of EAHCA's comprehensive enforcement scheme. *Teresa Diane P. v. Alief Independent School District*, 744 F.2d 484, 490 (5th Cir.1984); *Marvin H. v. Austin Independent School District*, 714 F.2d 1348, 1358 (5th Cir.1983).

**3.** The district court also expressed an opinion that the services offered by the school board in the IEP conference met Jackson's needs more

effectively than did the IEP in effect in January 1984. Because we are concerned only with the question whether Jackson should be admitted to the public schools pending the final disposition of his IEP appeal, we do not consider the merits of his former IEP or the one proposed by the school board.

**4.** Since the initiation of the action, Jackson has received a hearing before an administrative officer who upheld the school board's decision to change Jackson's education plan. Jackson appealed the placement decision to the state Department of Education's Review Board, which also affirmed the school board's proposed IEP. That administrative decision, however, is not before us on this appeal.

agency action relating to the child's IEP, the state must provide for an impartial due process hearing and an administrative appeal. 20 U.S.C. § 1415(b), (c); *Stacy G.*, 695 F.2d at 952. A judicial remedy is provided for review of adverse administrative determinations. 20 U.S.C. § 1415(e)(2); *Stacy G.*, 695 F.2d at 952.

■ Jackson has invoked, in a separate action, the administrative and judicial review process under EAHCA to challenge the school board's proposed IEP. The narrow question here does not concern the merits of the proposed IEP but whether Jackson should be readmitted as a student under the IEP in effect in January 1984 pending the outcome of his IEP appeal. The provision of EAHCA relevant to this issue is 20 U.S.C. § 1415(e)(3), which provides:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local education agency and the parents or guardian otherwise agree, the child *shall remain in the then current educational placement of such child,* or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed. (Emphasis added.)

The directive of section 1415(e)(3) is clear; it is designed to preserve the status quo pending resolution of administrative and judicial proceedings under EAHCA. *Brookline*, 722 F.2d at 915; *Stacy G.*, 695 F.2d at 953.[5] Although the statute provides for maintaining a child in his most current educational placement, schools have discretion to alter a handicapped student's placement when he endangers himself or others and threatens to disrupt a safe school environment. This exception to the general rule was recognized in *S–1 v. Turlington*, 635 F.2d 342, 348 n. 9 (5th

Cir.1981): "[T]he local school board retains the authority to remove a handicapped child from a particular setting upon a proper finding that the child is endangering himself or others." *See also Stacy G.*, 695 F.2d at 955 n. 5 ("automatic preliminary injunction" provided by section 1415(e)(3) does not place a statutory bar to the district court's grant of equitable relief that may result in a modification of the child's placement); 45 C.F.R. § 300.513 (comment) ("While the placement may not be changed, this does not preclude the agency from using its normal procedures for dealing with children who are endangering themselves or others").

Other courts also have held that section 1415(e)(3) does not bar a court from exercising its traditional equity powers to modify the placement of a handicapped child during the pendency of his IEP appeal. For example, in *Victoria L. by Carol A. v. District School Board*, 741 F.2d 369 (11th Cir.1984), the trial court found that a handicapped student's behavior at her high school "had not only proved unacceptable, it had been dangerous." *Id.* at 371. The Eleventh Circuit rejected the student's argument that she had an absolute right under section 1415(e)(3) to remain in high school during the pendency of an appeal concerning her school placement. The court noted that even those courts expanding the rights of handicapped students beyond EAHCA have held that Congress did not intend to deprive local school boards of their traditional authority and responsibility to ensure a safe school environment. *Id.* at 374 (citing *S–1 v. Turlington*, 635 F.2d 342 (5th Cir.1981)). Thus, the public schools unquestionably retain their authority to remove any student, handicapped or otherwise, who disrupts the educational process or poses a threat to a safe school environment.

---

5. There is a dispute between the parties as to Jackson's "current educational placement." The school board contends that when the youth court committed Jackson to the East Mississippi State Hospital for treatment, his placement became "out-of-school" and thus section 1415(e)(3) does not require that he be placed "in school" pending his IEP appeal. Without resolving this issue we may assume, for the purposes of deciding this appeal, that Jackson's current educational placement is "in school."

## III

■ As stated earlier, the district court found that Jackson's placement in the Franklin County public school system would be disruptive to the educational process. After carefully reviewing and considering the record, we are convinced that the district court's finding is not clearly erroneous. There was testimony at the district court hearing by Dr. Anita Schexnayder, the special education director of the Franklin County Schools, that Jackson's readmission in public school would have potentially serious, emotional effects on some of the students in the special education program, and would subject Jackson to threat of physical harm. From personal knowledge, gained from her position in the school system, Dr. Schexnayder testified that in addition to the January 1984 incident, Jackson had been involved in disruptive behavior within the school on at least one previous occasion, and as a result had been adjudged delinquent by the Franklin County Youth Court.[6] In addition, Dr. Schexnayder testified that Jackson was involved in a previous incident of sexual misconduct with a three-year-old girl outside the school grounds for which the youth court committed Jackson to an institution for delinquent youths.[7] Dr. Schexnayder's testimony was supported by Jackson's admission on cross-examination that he was involved in each of the three reported incidents of misconduct.

In conclusion, we hold that the district court's account of the evidence was plausible in the light of the record viewed in its entirety.[8] Because the district court's findings are not clearly erroneous, we hold that Jackson is not entitled to remain in the Franklin County public school system pending the resolution of his IEP appeal. The district court's judgment denying Jackson's motion for a preliminary injunction is

AFFIRMED.

---

6. The youth court's adjudication of delinquency was affirmed by the Mississippi Supreme Court in *In the Interests of J.E.J.,* 419 So.2d 1032, 1033 (Miss.1982). At trial counsel for Jackson stipulated that the supreme court decision referred to the plaintiff Jackson.

7. Jackson contends that Dr. Schexnayder's testimony was inadmissible because it was based in part upon psychiatric reports from the East Mississippi Hospital, which the district court held inadmissible. Although Dr. Schexnayder stated that her testimony was based in part upon the hospital records, she also testified that she had personal knowledge of Jackson's behavior

gained from her position as Special Education Director of the Franklin County Schools.

8. In *Anderson v. City of Bessemer City, North Carolina,* —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), the Supreme Court held that if the district court's findings under Fed.R.Civ.P. 52 are plausible in the light of the record viewed in its entirety, the Court of Appeals may not reverse even if it would have weighed the evidence differently. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id., 105 S.Ct. at 1512.