689 F.Supp. 197 (1988)
Bruce CRONIN, Carol Cronin and John Cronin, Plaintiffs,
v.
BOARD OF EDUCATION OF the EAST RAMAPO CENTRAL SCHOOL DISTRICT; Dr. Melvin Burwell, individually and as Director of Pupil Personnel Services of the East Ramapo Central School District; Dr. Mitchell Schwartz, individually and as Supervisor of Special Education of the East Ramapo Central School District; Thomas Sobol, individually and as Commissioner of Education of the State of New York and the Education Department of the State of New York, Defendants.
No. 88 Civ. 2560 (RJW).
United States District Court, S.D. New York.
May 23, 1988.
*198 Cardozo Bet Tzedek Legal Services, New York City (Frances M. Pantaleo and Toby Golick, of counsel), for plaintiffs.
Greenberg & Wanderman, Spring Valley, N.Y. (Carl L. Wanderman, of counsel), for *199 defendants Bd. of Educ., Dr. Brwell and Dr. Schwartz.
Robert E. Diaz, New York State Educ. Dept., Albany, N.Y. (Frederick W. Burgess, of counsel), for defendant Thomas Sobol.

OPINION
ROBERT J. WARD, District Judge.
Plaintiffs Bruce Cronin, Carol Cronin and John Cronin move pursuant to Rule 65, Fed.R.Civ.P., for a preliminary injunction requiring defendant East Ramapo Central School District ("the School District") to continue plaintiff Bruce Cronin's educational placement in the Board of Cooperative Educational Services ("Boces") pending a final judgment in this action. For the reasons hereinafter stated, the motion is granted.

BACKGROUND
Bruce Cronin is twenty years of age and resides with his parents Carol Cronin and John Cronin in Monsey, New York. He has been classified as emotionally disabled by the School District.
In 1985, the Committee on the Handicapped ("COH") determined that Bruce was eligible to attend the vocational training program at Boces in addition to classes at the Karafin School, which he had been attending since 1979 when he was first placed there by the School District. The Boces course was a "mainstream" course not designed primarily for handicapped children. Bruce was enrolled in the electrical mechanical systems program at Boces in November 1986 and received passing grades. The COH continued him in the program for the 1986-87 school year and again, he received passing grades. In March 1987, plaintiffs were notified that the COH had determined to graduate Bruce at the end of the 1986-87 school year pending completion of the requirements for graduation. Having received a letter on March 30, 1987 from Boces stating that Bruce should continue in the Boces program for another year, the Cronins on April 1987 requested an impartial hearing officer be appointed to resolve the conflict. On April 30, 1987, the Cronins were informed that Bruce had met all of his graduation requirements and would be graduated.
A hearing was held on June 11, 1987, before an Impartial Hearing Officer ("IHO"), regarding the School District's decision to graduate Bruce. Contending that Bruce had not attained the recommended targets established for him in the Boces program, the Cronins objected to the decision to graduate Bruce. Following the hearing but prior to the IHO's decision, Bruce was graduated and received a regular high school diploma. On August 15, 1987, the IHO rendered a written decision upholding the recommendation of the School District that Bruce should be graduated. In addition, the IHO found that Bruce could possibly continue to attend the Boces program after his graduation through the auspices of the Office of Vocational Rehabilitation ("OVR"). The IHO recommended that the school district arrange an appointment with the OVR representative at Boces. The Cronins do not appear to have accepted the recommendation at the time.
Thereafter, the Cronins appealed the IHO's decision to the Commissioner of Education. On August 31, 1987, the Cronins by letter requested that Bruce continue in the Boces program during the pendency of the proceedings. On September 3, 1987, the School District informed the Cronins that it refused to provide the requested services. Both the School District and the Commissioner of Education denied applications for a stay pending appeal to continue Bruce's placement in the Boces Program.
On December 16, 1987, the Commissioner of Education upheld the decision of the hearing officer and denied the application to continue Bruce's placement in the program, finding that the School District properly awarded a high school diploma to him. The Commissioner also recommended that the Cronins apply to OVC. With respect to plaintiffs' contention that Bruce should remain in the Boces program during the pendency of the proceedings, the Commissioner stated:

*200 Although respondent is correct in its assertion that the term "child with a handicapping condition" is defined by Education Law § 4401(1) to mean, in part, a person under 21 who is entitled to attend public schools pursuant to Education Law § 3202, and that § 3202(1) provides that a person who has received a high school diploma is not entitled to attend public schools on a tuition-free basis, it does not follow that the very specific provisions of Education Law § 4404(4) may be avoided by the conferral of a high school diploma which is the subject of an appeal pursuant to § 4404. Nevertheless, I am constrained to dismiss the appeal which has now become moot, in view of my determination that respondent properly awarded a high school diploma to petitioners' son.
On April 11, 1988, the Cronins filed the instant action pursuant to The Education of All Handicapped Children Act, ("EHA" or "the Act"), 84 Stat. 175, as amended, 20 U.S.C. § 1400 et seq., as well as a number of other federal statutes and constitutional provisions.[1] On April 13, 1988, they moved for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P., requesting that this Court require the School District to continue Bruce's placement at Boces until a final judgment is rendered in this action. The motion was argued before the Court on April 22, 1988 and final submissions were received on May 10, 1988.
In accordance with the suggestion of the Court made at oral argument, Bruce has now applied to OVR. To date, his application does not appear to have been acted upon. Affidavit of Carol Cronin, filed May 4, 1988. However, the Cronins have indicated an unwillingness to have Bruce attend the OVR program unless it could provide free transportation. Unfortunately, OVR only provides transportation services if the family qualifies on the basis of financial need. The Cronins believe that they do not qualify for free transportation services. Id. Since his graduation, Bruce has been employed as a part time stock boy earning approximately $95 a week.

DISCUSSION

I. Automatic Injunction Provisions of Section 1415(e)(3)

In the EHA, Congress sought "to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected." 20 U.S.C. § 1400(c). The Act confers upon disabled students an "enforceable substantive right to public education in participating States ... and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." Honig v. Doe, ___ U.S. ___, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988).
The EHA requires that each disabled child receive an annual individualized education program ("IEP"), a written statement prepared by the school district in conjunction with the child's parents or guardians, the child's teacher and the child. 20 U.S.C. § 1401(19). The IEP is required to set forth the child's present level of educational performance, to establish annual goals, including short-term instructional objectives, and to describe the specific educational services that will be provided to the child to enable the child to meet the stated goals. 20 U.S.C. § 1401(19).
Because Congress envisioned such a significant parental role in the preparation of the IEP, the Act establishes a variety of procedural protections that ensure parents have an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of decisions with which they disagree. Honig v. Doe, supra, 108 S.Ct. at 598. The procedural safeguards include the right to examine *201 all relevant records with respect to the identification, evaluation, and educational placement of their handicapped child, prior written notice when an educational agency either initiates or refuses to initiate a change in the child's placement, and an opportunity to have an impartial due process hearing with respect to any complaints parents might have concerning their child's education. 20 U.S.C. § 1415(b)(1), (2). The Act also provides that at the conclusion of the impartial hearing, the aggrieved party can seek further administrative review and, if unsuccessful, can ultimately appeal by filing a civil action in any state or federal court. 20 U.S.C. § 1415(c), (e)(2).
At issue in this case is the "stay-put" provision of the Act which governs the placement of the child during this series of review procedures. The provision directs that:
During the pendency of any proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child ...
20 U.S.C. § 1415(e)(3).[2] Recently describing this provision as a "clear directive," the Supreme Court has stated:
The language of § 1415(e)(3) is unequivocal. It states plainly that during the pendency of any proceedings initiated under the Act, unless the state or local educational agency and the parents or guardian of a disabled child otherwise agree, "the child shall remain in the then current educational placement."
Honig v. Doe, supra, 108 S.Ct. at 604 (quoting 20 U.S.C. § 1415(e)(3)).
In Honig, the Supreme Court considered the question of whether to read a dangerousness exception into the stay-put provision so that school officials could remove children who were violent or dangerous from school during the pendency of EHA proceedings. The Court declined to so rewrite the statute, instead giving it a strict interpretation allowing only courts not school officials to determine when a handicapped child should be indefinitely suspended or expelled. Discussing the legislative intent behind the provision, the Court explained that "Congress very much meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students ... from school." Honig v. Doe, supra, 108 S.Ct. at 604. Therefore, one of the purposes of the provision was "`to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.'" Id. (quoting School Committee of Burlington v. Massachusetts Dept. of Education, 471 U.S. 359, 373, 105 S.Ct. 1996, 2004, 85 L.Ed.2d 385 (1985)). See also Jackson v. Franklin County School Board, 765 F.2d 535, 538 (5th Cir.1985) ("The directive of section 1415(e)(3) is clear; it is designed to preserve the status quo pending resolution of administrative and judicial proceedings ..."); Vander Malle v. Ambach, 673 F.2d 49, 52 (2d Cir.1982) (§ 1415(e)(3) is "status quo provision" of the Act).
*202 Clearly, by enacting section 1415(e)(3), Congress made a policy choice. Congress decided that the danger of excluding a handicapped child entitled to an educational placement from that placement was much greater than the harm of allowing a child not entitled to an educational placement to remain in that placement during the pendency of judicial proceedings. Thus, the statute provides that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current placement until the dispute with regard to their placement is ultimately resolved.[3]
Many Courts have referred to section 1415(e)(3) as providing an "automatic preliminary injunction." See Honig v. Doe, supra, 108 S.Ct. at 605; Stacey G. v. Pasadena Independent Sch. Dist., 695 F.2d 949, 955 n. 5 (5th Cir.1983). Due to this automatic preliminary injunction, it appears that a Court need not apply the standard test for an injunction pursuant to Rule 65, Fed.R.Civ.P., but can simply apply the language of the statute where it is applicable. See Cochran v. District of Columbia, 660 F.Supp. 314, 319 (D.C.D.C.1987) (although traditional preliminary injunction standards were not met, district court found that injunction under § 1415(e)(3) would nonetheless issue).
Accordingly, the threshold question is whether the determination to graduate Bruce constitutes a change in educational placement that when challenged would trigger the protection of the stay-put provision of the Act. If Bruce's graduation is not a change in educational placement within the meaning of the EHA, then the School District was free to graduate Bruce. If, however, Bruce's graduation is a change in educational placement, then the School District should have permitted Bruce to remain in the Boces program, his undisputed "current placement," until the completion of all proceedings under the EHA.[4]
The EHA nowhere defines the phrase "change in placement," see Honig v. Doe, supra, 108 S.Ct. at 605, nor does the statute's structure or legislative history provide any guidance as to whether graduation of a handicapped student would constitute a such a change. "The question of what constitutes a change in educational placement is, necessarily, fact specific." DeLeon v. Susquehanna Community School Dist., 747 F.2d 149, 153 (3rd Cir. 1984). In determining what changes would fall into that category, a court should focus on the importance of the particular modification involved. Id. Where a decision involves the educational program of an individual child, the remedial purposes of the Act require that definition of "change in educational placement" should be given an expansive reading. Id. "The touchstone in interpreting section 1415 has to be whether the decision is likely to affect in some significant way the child's learning experience." Id.
Courts have found that an expulsion of a handicapped student constitutes a "change in placement" within the meaning of the EHA. Doe v. Maher, 793 F.2d 1470, 1482 (9th Cir.1986), aff'd in part, modified in part, ___ U.S. ___, 108 S.Ct. 592, 98 L.Ed. 2d 686 (1988); Kaelin v. Grubbs, 682 F.2d *203 595, 598-602 (6th Cir.1982). In Honig v. Doe, supra, 108 S.Ct. at 605, the Supreme Court held that any suspension in excess of 10 days constitutes a prohibited "change in placement." Distinguishing the longer suspension from the short term suspension, the Court found that Congress was primarily concerned with insuring that handicapped children were not excluded from school:
Congress sought to prevent schools from permanently and unilaterally excluding disabled children by means of indefinite suspensions and expulsions; the power to impose fixed suspensions of short duration does not carry the potential for total exclusion that Congress found so objectionable.

Honig v. Doe, supra, 108 S.Ct. at 605 n. 8 (emphasis added).
Because graduation is similar to longterm suspensions and expulsions in that it results in total exclusion of a child from his or her educational placement, graduation would appear to be a "change in educational placement" implicating the mandatory procedural safeguards of the EHA. Although this is an issue of first impression in the federal courts, a Massachusetts court has held that graduation is a change in educational placement under the Act.
In Stock v. Massachusetts Hosp. School, 467 N.E.2d 448, 453, 392 Mass. 205 (1984), cert. denied, 474 U.S. 844, 106 S.Ct. 132, 88 L.Ed.2d 109 (1985), the Supreme Judicial Court of Massachusetts stated that it was "obvious ... that graduation, because it will cause the termination of a student's participation in special education programs, can hardly be characterized as anything other than a change in placement." The court went on to point out that "[n]o change in placement seems quite so serious nor as worthy of parental involvement and procedural protections as the termination of placement in special education programs."
This Court finds the reasoning of Stock to be persuasive. There is no question that the termination of an individual child's educational program inherent in a graduation will significantly affect a child's learning process. Unless the child is immediately placed by his parents or guardians into another program following graduation, the child will be receiving no instruction at all.[5] Accordingly, this Court holds that the decision to graduate a handicapped child is a "change in educational placement" under the EHA that triggers all of the procedural protections of the Act.[6]
Having found that graduation is a "change in educational placement," the Court concludes that Bruce's removal from the Boces program by graduation during the pendency of the administrative proceedings violated the stay-put provision of the EHA. Therefore, the Court orders that the School District immediately reinstate Bruce to the Boces program during the pendency of these proceedings, unless school officials and Bruce's parents agree on a satisfactory alternative arrangement.

II. Traditional Standard for Injunctive Relief

The same result would be reached if this Court applied the traditional standard of *204 injunctive relief. In this Circuit, preliminary injunctive relief will be granted only upon "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Roso-Lino Beverage Distributors v. Coca-Cola Bottling Co., 749 F.2d 124, 125 (2d Cir.1984) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir.1979)).
In Honig, the Supreme Court indicated that a violation of the stay-put provision is presumptive evidence of irreparable harm. The Court stated in response to the Government's argument that the district court indulged in an improper presumption of irreparable harm to the students, "we do not believe that school officials can escape the presumptive effect of the stay-put provision simply by violating it and forcing parents to petition for relief." Honig v. Doe, supra, 108 S.Ct. at 607 n. 10. The Court found that in any suit brought by parents seeking injunctive relief for a violation of section 1415(e)(3), the burden rests with the school district to demonstrate that the educational status quo must be altered. Id.
In the instant case, the Court finds that, even without a presumption of irreparable injury, plaintiffs have met the traditional requirements for injunctive relief. Moreover, defendants have failed to meet their burden of demonstrating why Bruce should have been removed from the Boces program in the first instance.
The irreparable harm to Bruce if this preliminary injunction is not granted could hardly be clearer. Without an injunction, Bruce will continue to remain out of school, receiving no instruction at all. A cessation of a handicapped child's schooling and the accompanying loss of educational, vocational and social development constitutes irreparable injury. See Ross v. Disare, 500 F.Supp. 928, 934 (S.D.N.Y.1977) ("interruption of a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury"). As the First Circuit has noted, special needs children should not be treated "as though they were nonperishable commodities able to be warehoused until the termination of in rem proceedings." Town of Burlington v. Department of Educ., 736 F.2d 773, 798 (1st Cir.1984), aff'd, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Regardless of whether Bruce's case is meritorious or not, it is clear that money damages cannot compensate for a deprivation of a free, appropriate, public education pending litigation on the merits. See Fallis v. Ambach, 710 F.2d 49, 53 (2d Cir.1983).[7]
Similarly, the balance of hardships decidedly lies in Bruce's favor. The harm to defendants if the preliminary injunction is granted is the cost of one additional student being enrolled and transported to the Boces program. In the Court's view, whatever the magnitude of this cost, it cannot outweigh the harm to Bruce of further exclusion from his educational program.
With respect to the merits, the Court finds that, in light of the unequivocal language of the stay-put provision, to require in the traditional sense either success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation would be inconsistent with the intent of Congress. As noted above, the stay-put provision was intended to keep a child in his current educational placement during the pendency of administrative and judicial action on his complaint. The provision nowhere indicates that its *205 application is limited to situations where the School District believes the child's case is meritorious. It exists as a safeguard in all cases to ensure that crucial services are not denied while the substantive issues are being resolved. Accordingly, any evaluation of the merits must be strictly limited to whether the conditions of § 1415(e)(3) have been met: 1. has plaintiff filed a complaint, thereby falling within the class of individuals the stay-put provision was designed to protect?; and 2. has plaintiff demonstrated a change in educational placement?
Inasmuch as Bruce clearly falls within the class of handicapped children the stay-put provision was designed to protect and graduation is a change of placement under the Act, the Court believes that his exclusion from school during the pendency of the administrative proceedings raises sufficiently serious questions going to the merits to make them a fair ground for litigation.
Finally, the School District has given the Court no valid reason for Bruce's exclusion from the Boces program during the pendency of the litigation. Absent a showing that maintaining Bruce in Boces "was substantially likely to result in injury either to himself ... or to others," Honig v. Doe, supra, 108 S.Ct. at 606, Bruce was entitled to remain in Boces during the pendency of all proceedings concerning his educational placement.[8]

CONCLUSION
Inasmuch as Bruce's removal from the Boces program violated the stay-put provision of the EHA, plaintiffs' motion for a preliminary injunction is granted. The School District must immediately reinstate Bruce to the Boces program during the pendency of these proceedings, unless school officials and Bruce's parents agree on a satisfactory alternative arrangement.
Because the Court is concerned with the continuity of Bruce's education and the harm he will potentially suffer if he is reinstated and later removed from the program, the action shall be placed on an expedited discovery track and determined on its merits before the beginning of the 1988-89 school year. Plaintiffs are strongly encouraged by the Court to continue exploring the option of placement by OVR so that Bruce can continue vocational training in the event that the Cronins do not ultimately succeed on the merits of this action. The parties are directed to complete discovery by July 15, 1988 and file a joint pretrial order by August 5, 1988. In addition, the parties are directed to appear before the Court on May 27, 1988 at 10:00 a.m. if they are unable to agree on the issue of plaintiffs' posting security.
Settle preliminary injunction on one day's notice.
NOTES
[1] The Court notes that plaintiffs' civil action is timely in that it was filed before the expiration of the applicable four month statute of limitations period. See Adler v. Education Department of the State of New York, 760 F.2d 454, 457 (2d Cir.1985) (appropriate statute of limitations period for Education of All Handicapped Children Act in New York is four months since Article 78 proceeding is most closely analogous state cause of action).
[2] The regulations promulgated in accordance with this provision state:

During the pendency of any administrative or judicial proceeding regarding a complaint, unless the public agency and the parents of the child agree otherwise, the child involved must remain in his or her present educational placement.
34 CFR § 300.513. The Comment accompanying this regulation provides:
Section 300.513 does not permit a child's placement to be changed during a complaint proceeding, unless the parents and agency agree otherwise. While the placement may not be changed, this does not preclude the agency from using its normal procedures for dealing with children who are endangering themselves or others.
The New York statutory scheme strictly complies with the federal standards. Section 4404 of the New York Education law reads in pertinent part:
During the pendency of any proceedings conducted pursuant to [§ 4404] and during the initial identification, evaluation and placement procedure pursuant to this section ... unless the commissioner or local school district and the parents or legal guardian otherwise agree, the child shall remain in the then current educational placement of such child....
N.Y.Educ.Law § 4404 (Mc Kinney 1981).
[3] Naturally, because Congress did not intend to freeze an inappropriate placement for the review period, Courts are permitted under certain circumstances to utilize their equitable powers to modify a child's placement so that the child is given an appropriate placement during the pendency of administrative and judicial appeals. See e.g., Jackson v. Franklin County School Board, 765 F.2d 535, 538 (5th Cir.1985); Doe v. Brookline School Committee, 722 F.2d 910, 917 (1st Cir.1983); Stacey G. v. Pasadena Independent Sch. Dist., 695 F.2d 949, 955 n. 5 (5th Cir.1983) (compiling cases).
[4] Defendants argue that because Bruce was validly issued a high school diploma, he no longer falls within the protection of the Act. This argument was rejected by the Commissioner of Education when he stated that the pendency provisions of the education law could not be avoided by the conferral of a high school diploma which is the subject of an appeal. The Court agrees, finding that defendants' interpretation would render the stay-put provision meaningless because the school district could unilaterally graduate handicapped children. The primary issue before this Court is whether Bruce was properly graduated. Until that issue is ultimately decided, Bruce is entitled to remain at Boces in accordance with protection provided by the stay-put provision.
[5] Even defendants acknowledge that Bruce's graduation will terminate his education. They admit that his graduation is a "completion of the placement." Defendants Supplementary Memorandum of Law, at 7.
[6] In so holding, the Court must disagree with the opinion of former Commissioner of Education Ambach. In In the Matter of Handicapped Child, 20 Educ.Dept.Rep. 554, 559 (1981), Commissioner Ambach found that the issuance of a diploma to a pupil who has attained all of the requirements for graduation does not constitute a change in placement for the purposes of section 1415(e)(3). In the Court's view, this opinion does not address the crucial issue in this case which is whether graduation requirements for the handicapped, who are entitled to a free appropriate education, can be met by the mere accumulation of academic credits or whether the achievement of certain skills and goals listed in the student's individualized education program is necessary. At this time, the Court expresses no view on the underlying merits of the litigation. However, the Court finds that during the pendency of proceedings that address whether a handicapped student has met the requirements for graduation, the student should remain in his or her present educational placement unless the public agency and the parents of the child agree otherwise.
[7] The Court takes issue with defendants' contention that irreparable harm does not exist because plaintiff can possibly attend Boces through the auspices of OVR. Initially, it is not clear that Bruce would be placed back at Boces through the OVR program. Moreover, defendants cannot escape their obligations under the statute merely by arguing that the parents can always seek alternative placement. Such an interpretation would both eviscerate the purpose of the stay-put provision and create incentives for parents to unilaterally place their children in other programs, forcing them outside the protection of the Act.
[8] Defendants' argument that the injunction should not be granted, because plaintiffs are not calling upon the Court to maintain the status quo but rather reinstate Bruce to the program, is without merit. Clearly, it is the last uncontested status preceding the controversy which constitutes the status quo to be continued by virtue of the statutory mandate. See Grkman v. Scanlon, 528 F.Supp. 1032, 1035 (W.D.Pa.1981), vacated on other grounds, 707 F.2d 1388 (3d Cir.1982). Moreover, absent defendants' violation of the stay-put provision, Bruce would never had been removed from Boces. Defendants cannot be permitted to profit from their own blatant violation of the terms of section 1415(e)(3).