**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1009
_____

R.B., A Minor and Through her Parent

v.

MASTERY CHARTER SCHOOL;
THE SCHOOL DISTRICT OF PHILADELPHIA

MASTERY CHARTER SCHOOL,
                                        Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 10-cv-06722)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit LAR 34.1(a)
(Submitted: March 19, 2013)
_____

Before: SMITH, GREENAWAY, JR., and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed:  July 25, 2013)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

On November 17, 2010, R.B., through her mother, Rozelia Ballard ("Ms. Ballard") (collectively, "Appellees"), filed a motion seeking a mandatory injunction against Appellant Mastery Charter School ("Appellant" or "Mastery") and the School District of Philadelphia ("School District"), under the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), requesting that the District Court order Mastery to re-enroll R.B. during the pendency of all proceedings. *See* 20 U.S.C. § 1415(j). The District Court granted the motion for an injunction. This appeal followed. For the reasons below, we will affirm.[1]

## I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts. R.B. was born on December 5, 1991 and is diagnosed with Trisomy 21 (Down Syndrome). Based on her diagnosis, R.B. qualified for special education services under the IDEA. From 2005 to 2007, R.B. attended Pickett School within the School

---

[1] At the time that Mastery filed the notice of appeal on January 6, 2011, R.B. was represented by counsel. On September 8, 2011, we granted R.B.'s counsel's request to withdraw. Ms. Ballard is not permitted to represent R.B. because parents may not represent their children in IDEA cases in federal court. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 878 (3d Cir. 1991). Thus, R.B. is currently unrepresented. This does not prevent us from hearing this appeal. *See Ray v. Robinson*, 640 F.2d 474, 476 (3d Cir. 1981) (reaching the merits of the appeal despite appellee's refusal to participate); *see also United States v. Everett*, 700 F.2d 900, 902 (3d Cir. 1983) (finding that the court may "decide the case on the brief of the appellant only" if appellee fails to file a brief). Additionally, given that we will affirm, concerns regarding safeguarding R.B.'s rights are not as pronounced as they might otherwise be. *See Osei-Afriyie*, 937 F.2d at 883 ("Where [children] have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected.").

District. In 2007, Mastery, a charter school, took over management of Pickett. Since R.B. was already attending Pickett, she automatically became a student of Mastery, and Mastery assumed the responsibility for implementing R.B.'s Individualized Education Plan ("IEP"). The most recent IEP for R.B. was developed in October 2008 ("2008 IEP"). Although not mandated by the 2008 IEP, R.B. received individual support from a Therapeutic Support Staff ("TSS") during her time at Mastery. The TSS monitored R.B.'s many health issues, assisted her to and from school, helped her transition between classes, and helped with her class work. Ms. Ballard felt that the TSS workers were sometimes unreliable. Indeed, Ms. Ballard would occasionally escort R.B. to class herself and assist her during the day.

Mastery sought to accommodate R.B.'s needs. Mastery, among other things, modified its attendance policy requirements to oblige R.B.'s health issues. R.B. has physical impairments, including a congenital heart condition, a heart murmur, and sleep apnea. These conditions prevented R.B. from consistently waking up in time for school and often required that she miss entire days. Prior to April 2009, Mastery never recorded attendance for R.B., nor did it enforce its truancy policies against her.

In March 2009, the relationship between Ms. Ballard and Mastery deteriorated. One day, Ms. Ballard brought R.B. to school earlier than usual and was unable to locate R.B.'s classroom. Ms. Ballard refused to sign in and then disrupted a faculty meeting. In response to this incident, Mastery's principal sent a letter to Ms. Ballard informing her

that, in the future, she should make a scheduled appointment in order to enter Mastery. Ms. Ballard interpreted this letter to mean that she was no longer permitted to escort R.B. to class and situate her in the classroom. After receiving the letter, Ms. Ballard stopped bringing R.B. to school.

The record below indicates that on April 28, 2009, Mastery began marking R.B. absent. On May 13, 2009, Ms. Ballard, on behalf of R.B., filed a complaint ("first complaint") in district court against Mastery and the School District.[2] On June 19, 2009, after sending three written communications to R.B.'s mother, Mastery dropped R.B. from its attendance roll. Mastery claims it did so in compliance with § 11.24 of the Pennsylvania School Code, which mandates that schools dis-enroll students after ten consecutive absences. 22 Pa. Code § 11.24.[3] On August 28, 2009, the first complaint was dismissed.

On October 5, 2010, Appellees filed a Due Process complaint with the Pennsylvania Office for Dispute Resolution against Mastery and the School District. Appellees also sought the issuance of a stay-put order. On November 1, 2010, the Due

---

[2] The first complaint alleged a "violation of [R.B.'s] civil rights, as well as pattern and practice discrimination, breach of contract, [p]erjury, fraud, defamation of character, violation of FAPE, violation of HIPPA privacy policy, slander and conspiracy." Compl. at 1, *Ballard v. Sch. Dist. of Phila.*, No. 09-1627 (E.D. Pa. May 13, 2009), ECF No. 3.

[3] Section 11.24 provides: "Students whose names are on the active membership roll, who are at anytime in the school term absent from school for 10 consecutive school days, shall thereafter be removed from the active membership roll unless one of the following occurs: (1) The district has been provided with evidence that absence may be legally excused. (2) Compulsory attendance prosecution has been or is being pursued."

Process Hearing Officer issued an opinion in which he declined to determine where R.B. would continue her education during the pendency of the proceedings. The Hearing Officer found that he could not determine the appropriate stay-put placement for R.B. until the underlying Due Process complaint had been resolved because "there was no operative placement [for R.B.] actually functioning at the time this dispute first arose" and Mastery's disenrollment of R.B. was "a mixed question of fact and law." (App. at Exhibit A.)

On November 17, 2010, Appellees appealed the Hearing Officer's refusal to issue a stay-put order by filing a complaint in District Court. Appellees also filed a motion seeking a mandatory injunction under the IDEA's "stay-put" provision. 20 U.S.C. § 1415(j). Mastery and the School District filed motions to dismiss the underlying complaint and opposed the request for a mandatory injunction.

On December 30, 2010, the District Court granted the School District's motion to dismiss for failure to state a claim because the complaint made no claims against the School District. *R.B. ex rel. Parent v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 753-54 (E.D. Pa. 2010). The District Court then denied both Mastery's and the School District's motions to dismiss under Fed. Rule of Civ. P. 12(b)(1); the District Court excused Appellees' failure to exhaust administrative remedies "'because, given the time-sensitive nature of the IDEA's stay-put provision, an immediate appeal is necessary to give realistic protection to the claimed right.'" *Id.* at 754-56 (quoting *Murphy v. Arlington*

*Cent. Sch. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)).  The District Court also found that Mastery's unilateral dis-enrollment of R.B. was a change in placement that violated the stay-put provision of the IDEA and ordered that R.B. be immediately re-enrolled at Mastery during the pendency of the administrative proceedings.  *Id.* at 763.  The District Court then issued the stay-put injunction.  Mastery timely appealed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A).  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Because "the stay-put provision was intended to serve as a type of 'automatic preliminary injunction,'" *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 650 (3d Cir. 2000), we will exercise the same standard in reviewing mandatory stay-put injunctions as we do in reviewing preliminary injunctions.  "'We employ a tripartite standard of review for . . . preliminary injunctions.  We review the District Court's findings of fact for clear error.  Legal conclusions are assessed de novo.  The ultimate decision to grant or deny the injunction is reviewed for abuse of discretion.'" *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (alteration in original) (quoting *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002)).

## III.    ANALYSIS

Mastery's arguments are essentially two-fold.  First, Mastery argues that the

6

District Court erred by concluding that the dis-enrollment of R.B. was a "change in placement" that violated the stay-put provision. Second, Mastery argues that the District Court erred when it found that Pennsylvania state law mandating the dis-enrollment of students following ten consecutive absences was preempted by the IDEA under the Supremacy Clause of the Constitution. We address each argument in turn.

A.    Change in Placement

Mastery first argues that R.B.'s dis-enrollment from Mastery does not constitute a change in placement that would violate the stay-put provision. We disagree.

Section 614 of the IDEA, codified at 20 U.S.C. § 1415(j), provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." "Th[is] provision represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (internal quotation marks omitted). The stay-put provision "protects the status quo of a child's educational placement," *C.H. ex rel. Hayes v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010), by preventing "school districts from effecting unilateral change in a child's educational program," *Susquenita Sch. Dist. v. Raelee S. ex rel. Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996). *See also*

7

*Jackson ex rel. Thompson v. Franklin Cnty. Sch. Bd.*, 765 F.2d 535, 538 (5th Cir. 1985) ("The directive of [the stay-put provision] is clear; it is designed to preserve the status quo pending resolution of administrative and judicial proceedings . . . ."), *abrogated on other grounds by Honig v. Doe*, 484 U.S. 305 (1988). A parent may invoke the stay-put provision when a school proposes a change in the child's "then-current educational placement." *See* 20 U.S.C. 1415(j). The relevant inquiry under § 1415(j) thus becomes the identification of the child's "then-current educational placement." *See Drinker*, 78 F.3d at 865 (internal quotation marks omitted).

We look to a student's existing IEP to determine a child's "then-current educational placement" (or the "status quo") and whether a school has implemented a change from that IEP. "If an IEP has been implemented, then that program's placement will be the one subject to the stay[-]put provision." *Drinker*, 78 F.3d at 867 (internal quotation marks omitted); *see also Michael C.*, 202 F.3d at 650 (looking to the student's "existing IEP" to determine the limitations of the stay-put provision on the school's authority to unilaterally affect changes). The educational placement is thus defined as the IEP "actually functioning when the stay-put is invoked." *Drinker*, 78 F.3d at 867 (internal quotation marks omitted).

Here, R.B.'s most current IEP is from October 2008. This 2008 IEP unequivocally provides that R.B.'s Local Education Agency ("LEA") is Mastery Charter School and that the IEP will be implemented at Mastery. Moreover, Mastery admits that

the 2008 IEP is the "last-agreed-upon program" and that this IEP mandates R.B.'s placement at Mastery. Def.'s Mem. of Law in Opp'n to Mot. for Prelim. Inj. at 7-8 , No. 10-cv-6722, (E.D. Pa. Nov. 22, 2010), ECF No. 5. Because R.B.'s IEP designates Mastery as her LEA, any decision by the school to remove R.B. from Mastery is contrary to her existing IEP, constitutes a change in placement, and thus, violates the stay-put provision.

Mastery attempts to side-step the mandates of the stay-put provision by arguing that, since R.B. was dis-enrolled from Mastery on June 19, 2009, prior to the filing of the Due Process complaint on October 5, 2010, there were no "proceedings" pending and the dis-enrollment does not violate the stay-put provision. Essentially, Mastery is arguing that the "status quo" the stay-put provision seeks to maintain is the current state of affairs at the time of the filing of a complaint. Because Mastery dis-enrolled R.B. prior to the filing of the complaint, Mastery claims that R.B.'s LEA is not Mastery, but is the school district of her residence.

This argument is without merit. As noted earlier, the "status quo" is determined by the existing IEP. All parties agree that the 2008 IEP is the most current IEP, and the 2008 IEP clearly states that R.B.'s LEA is Mastery Charter School. As such, R.B.'s placement at Mastery is the "status quo" that is to be maintained through the stay-put provision. To hold otherwise would render the stay-put provision useless, as schools

9

could implement unilateral changes prior to a parent's suit and then claim that the new change is the status quo. This cannot be.

In *Honig v. Doe*, the Supreme Court held that a school's decision to expel students for violent behavior violated the stay-put provision. 484 U.S. 305, 323 (1988). In doing so, the Supreme Court was unequivocal that the stay-put provision reflected Congress's intent "to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students." *Id*; *see also Cronin v. Bd. of Educ. of East Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 203 (S.D.N.Y. 1988) (relying on *Honig* to hold that the school district's unilateral decision to graduate a disabled student over the objection of his parents constituted a change in placement and violated the stay-put provision). In the same vein, we now find that Mastery's unilateral dis-enrollment of R.B. violates the stay-put provision.

We are unmoved by Mastery's argument that the stay-put provision requires only the maintenance of a "student's educational program and not the particular building where the program is implemented." (Appellant's Br. 16.) Mastery is correct that the stay-put provision "is not construed so narrowly as to mandate the student remain in the exact physical location where he or she was schooled at the time the dispute arose." *George A. v. Wallingford Swarthmore Sch. Dist.*, 655 F. Supp. 2d 546, 550 (E.D. Pa. 2009). However, we have never permitted schools to make changes that "may have a significant effect on a child's learning experience." *DeLeon v. Susquehanna Cmty. Sch.*

10

*Dist.*, 747 F.2d 149, 154 (3d Cir. 1984) (holding that modifications to the method of transportation to and from school did not constitute a change in placement that would violate the stay-put provision). There is no question that the unilateral removal of R.B. from Mastery will significantly affect R.B.'s learning experience.[4]

B. Preemption

Mastery next argues that the District Court erred when it found that Mastery had unilaterally dis-enrolled R.B. Mastery contends that it was required to dis-enroll R.B. to comply with § 11.24 of the Pennsylvania School Code, which mandates that schools dis-enroll students after ten consecutive absences. 22 Pa. Code § 11.24. As an initial matter, in light of the evidence presented at the proceedings below, we cannot say that the District Court clearly erred in finding that Mastery unilaterally dis-enrolled R.B. *See K.A.*, 710 F.3d at 105 (noting that a district court's findings of fact with regard to preliminary injunctions are reviewed for clear error); *see also Anderson v. City of*

---

[4] Mastery also cites *Concerned Parents v. N.Y.C. Bd. of Educ.*, 629 F.2d 751 (2d Cir. 1980), and *Tilton ex rel. Richards v. Jefferson Cnty. Bd. of Educ.*, 705 F.2d 800 (6th Cir. 1983), in support of its argument that the transfer of a disabled student to a new school within the same district does not violate the stay-put provision. Mastery's reliance on these two cases is misplaced. As we previously explained, these two cases "involve an entirely different problem: whether a decision concerning the closing of a facility, which by definition involves . . . a substantial fiscal policy question for the school district, should be outside the [requirements of the stay-put provision.]" *DeLeon*, 747 F.2d at 153. More to the point, Mastery may not skirt its responsibility toward R.B. merely because R.B. has the option of continuing her education at another high school within the School District of Philadelphia. The relevant inquiry is not whether a child has educational options outside of her current placement, but whether forcing a child to utilize those options will significantly affect the child's learning experience. *See id.*

*Bessemer City*, 470 U.S. 564, 573-74 (1985) (explaining that under the highly deferential "clear error" standard, a district court's findings of fact may only be overturned if the finding is not "plausible in light of the record viewed in its entirety").

Ultimately, however, Mastery's purported reason for dis-enrolling R.B. is irrelevant because we agree with the District Court that Pennsylvania's mandatory attendance laws are preempted by IDEA's stay-put provision. Mastery argues that federal preemption cannot apply here because the IDEA is "silent concerning [mandatory school] attendance, and therefore, defers to the individual states relative to compulsory attendance statutes." (Appellant's Br. 21.) Federal preemption is not so constrictive.

Under the doctrine of federal preemption, which is rooted in the Supremacy Clause of the Constitution of the United States, state laws are invalid if they "'interfere with, or are contrary to, federal law.'" *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008) (quoting *Hillsborough Cnty. v. Automated Med. Labs.*, 471 U.S. 707, 712 (1985)). "There are three types of preemption: express preemption and two types of implied preemption, field preemption and conflict preemption." *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 406 (3d Cir. 2012). Conflict preemption is found where "compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where state law erects an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir.

12

2010) (internal quotation marks omitted).

Here, conflict preemption applies. It is impossible for Mastery to comply with the requirements of § 11.24 of the Pennsylvania School Code, while simultaneously complying with the stay-put provision; Mastery cannot remove R.B. from its attendance roll and implement her IEP at the same time. Under the preemption doctrine, the stay-put provision prevails. *See Doe ex rel. Gonzalez v. Maher*, 793 F.2d 1470, 1485-86 (9th Cir. 1986) (holding that the stay-put provision of the Education for All Handicapped Children's Act ("EHA")[5] preempted state law allowing the indefinite suspension or expulsion of a disabled student during administrative proceedings); *E.Z.-L. ex rel. R.L. v. NYC Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011) (holding that the stay-put provision preempted state law regarding unjust enrichment).

## IV.    CONCLUSION

We find no error in the District Court's factual or legal conclusions. The District Court did not abuse its discretion in granting the stay-put injunction. We will affirm the District Court's Order.

---

[5] The EHA was the IDEA's precursor. Pursuant to amendments enacted in 1990, the EHA was renamed the IDEA.